Filed                    23-CI-00122     03/08/2023                    Doug Fain, Jessamine Circuit Clerk

DOCUMENT

PM

NOT ORIGINAL

05/23/2023 03:17:50

82451-35

ELECTRONICALLY FILED
COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 23-CI-_____

RODNEY WORLEY and
500 MEMORIAL DRIVE, LLC, a Kentucky
Limited Liability Company                                                    **PLAINTIFFS**

v.

**COMPLAINT**

500 MEMORIAL DR KENTUCKY, LLC, a
Delaware limited liability company and
ZALMAN SKOBLO                                                                **DEFENDANTS**

<u>**SERVE VIA SECRETARY OF STATE**</u>

    **500 MEMORIAL DR. KENTUCKY, LLC**
    **5014 16th Avenue, Suite 9**
    **Brooklyn, New York 11204**

<u>**SERVE VIA SECRETARY OF STATE**</u>

    **500 MEMORIAL DR. KENTUCKY, LLC**
    **c/o File Right Corporate Services, LLC**
    **1201 N. Orange Street, Suite 7140**
    **Wilmington, Delaware  19801**

<u>**SERVE VIA SECRETARY OF STATE**</u>

    **ZALMAN SKOBLO**
    **5014 16th Avenue, Suite 9**
    **Brooklyn, New York 11204**

---

Come the Plaintiffs, Rodney Worley ("Worley") and 500 Memorial Drive, LLC, a Kentucky limited liability company ("Memorial") (collectively "Plaintiffs"), by counsel, and for their Complaint against 500 Memorial Dr. Kentucky, LLC, a Delaware limited liability company ("Memorial Kentucky"), and Zalman Skoblo ("Skoblo") (collectively "Defendants") and hereby state as follows:

1

Filed                    23-CI-00122     03/08/2023                    Doug Fain, Jessamine Circuit Clerk

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000001 of 000008

**EXHIBIT A**

Filed          23-CI-00122    03/08/2023          Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT
05/23/2023 03:17:50 PM
82451-35

## FACTS

1.    Memorial is a Kentucky limited liability company with its principal office in Nicholasville, Kentucky.  Its registered agent and manager is Rodney Worley ("Worley").

2.    Memorial Kentucky is a Delaware limited liability company. Its registered agent is File Right Corporate Services, LLC, 1201 N. Orange Street, Suite 7140, Wilmington, Delaware.

3.    Prior to the Closing described below, and in 2022, Memorial Kentucky was the owner of industrial warehouses located at 500 Memorial Drive, Nicholasville, Jessamine County, Kentucky ("the Property").

4.    Upon information and belief, at all times relevant in 2022, Skoblo held himself out to be the Managing Member of Memorial Kentucky and its primary owner.

5.    Skoblo's primary office in 2022 was located at 5014 16th Avenue, Suite 9, Brooklyn, New York 11204, and that is presumably his current office.

6.    Worley became involved in discussions with a representative of Memorial Kentucky, Yoel Israel, regarding the purchase of the Property.

7.    On March 25, 2022, Memorial Kentucky entered into a contract to sell the Property to Worley ("the Contract"), a copy of which is attached as **Exhibit A.**

8.    The Contract includes the following relevant provisions:

2.C.  Additional Conditions Precedent.  In addition to due diligence conditions precedent set forth in lettered paragraphs A and B above, Purchaser's obligation to purchase the Property is conditioned upon:

    1.    Purchaser reaching a satisfactory agreement with Dry Care, LLC to modify the Industrial Lease Agreement dated February 17, 2022 between it and Seller ("Lease").

9.    At the Closing, Seller shall execute and/or deliver…to Purchaser…:

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000002 of 000008

2

NOT ORIGINAL

05/23/2023 03:17:50

82451-35

E. Assignment of its rights under the Lease to Dry Care, LLC to the Purchaser.

20. In the event either party files a legal action to enforce or interpret this Contract the prevailing party shall be entitled to reimbursement from the other for its reasonable attorney's fees and costs incurred in connection with the action…

9. The Industrial Lease Agreement dated February 17, 2022 between Memorial Kentucky and Dry Care ("February 17 Lease"), to which the above-quoted provisions of the Contract referred, was sent to counsel for Worley by the attorney representing Memorial Kentucky, Bernie Shafran, in an email dated March 16, 2022. (A copy of the February 17 Lease is attached as **Exhibit B**; a copy of the March 16, 2022, email is attached as **Exhibit C**).

10. As a condition precedent to the closing, Worley insisted that Memorial Kentucky execute an Owner's Affidavit and Gap Undertaking ("Owner's Affidavit").

11. The Owner's Affidavit was executed on June 2, 2022 by Skoblo as a member of Memorial Kentucky. By executing the Owner's Affidavit, Skoblo swore that the contents of the Owner's Affidavit were true and his signature was notarized. (A copy of the Owner's Affidavit is attached as **Exhibit D)**.

12. The Owner's Affidavit contains the sworn statements:

3. Owner is entitled to possession of the Property, and there is no other person or entity in possession who has any right in the Property except for Dry Care pursuant to a **Lease dated February 17, 2022** ("the Lease"). **The Lease is in full force and effect, has not been amended, modified or supplemented , and as of this date,  no breach exists on the part of the Owner** under the Lease and to Owner's knowledge, no breach exists on the part of Dry Care under the Lease. (Emphasis added)

11. THIS AFFIDAVIT, is made for the purpose of inducing…500 Memorial Drive, LLC, a Kentucky limited liability company, to purchase the Property…Affiant [Skoblo] agrees to indemnify and hold harmless…500 Memorial Drive, LLC against any damages, or

3

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000003 of 000008

NOT ORIGINAL

05/23/2023 03:17:50

82451-35

expenses including attorney's fees, sustained as a result of any of the foregoing matters not being true and accurate…

13.     According to the sworn testimony of Max Shor ("Shor"), owner of Dry Care, through an Affidavit filed with the Court (**Exhibit E**) and at a hearing on August 18, 2022, in Jessamine Circuit Court Case No. 22-CI-395 ("Jessamine Action"), the February 17 Lease was never intended to be (and was not) binding and enforceable.

14.     Shor testified that Memorial Kentucky needed the February 17 Lease to provide to its lender at a February 18, 2022, closing, at which it purchased the Property.

15.     Further, Shor testified that on or about February 21, 2022, a lease was entered into between Memorial Kentucky and Dry Care ("February 21 Lease"), and that the February 21 Lease was intended to be the true and enforceable lease between the parties.

16.     Skoblo executed an Affidavit dated August 10, 2022 (**Exhibit F**) in which he confirmed there was no binding or enforceable February 17 Lease.  The August 10, 2022, Affidavit was filed in the Jessamine Action and directly contradicts Skoblo's Owner's Affidavit dated June 2, 2022.

17.     Memorial Kentucky's lender providing funding for the purchase of the Property was First Guaranty Bank of Vanceburg, Kentucky ("Bank").  Skoblo provided to Bank the February 17 Lease to support the anticipated annual income it would be receiving from Dry Care beginning February 17, 2022.  Skoblo never provided the Bank the February 21 Lease.

18.     Worley assigned the Contract to purchase the Property to Memorial.

19.     Memorial purchased the Property on June 7, 2022 for $4,000,000. (A copy of the recorded Deed "Deed" is attached as **Exhibit G).**

20.     At the Closing, Memorial Kentucky assigned the February 17 Lease to Memorial through an Assignment of Lease, which is attached as **Exhibit H**.

4

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000004 of 000008

Filed          23-CI-00122     03/08/2023          Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:17:50
PM
82451-35

21.     At the time Memorial purchased the Property, it believed the February 17 Lease was in full force and effect and was unaware of the February 21 Lease

22.     Memorial Kentucky made a profit from the sale of the Property to Memorial in an amount of approximately $1,140,000.

23.     Subsequent to Memorial's purchase of the Property, Dry Care insisted it was not bound by the February 17 Lease, and that, instead, the February 21 Lease was in full force and effect.

24.     Memorial filed the Jessamine Action against Dry Care for damages and to require it to vacate the Property.

25.     After hearing the matter, and on January 20, 2023, the Court entered Findings of Fact, Conclusions of Law and a Judgment ("the Judgment") in the Jessamine Action. A copy of the Judgment is attached as **Exhibit I.**

26.     Because no Notice of Appeal was filed in the Jessamine Action, the Judgment is final.  Memorial has not been paid the Judgment award.

27.     Dry Care has now vacated the Property after causing substantial damage to it and removing fixtures belonging to Memorial.

**JURISDICTION AND VENUE**

28.     Because the Defendants have transacted business within the Commonwealth, caused tortious injury by their acts and omissions within the Commonwealth, and have held an interest in real property in the Commonwealth (from which the Plaintiffs' claims arise), this Court has jurisdiction over Memorial Kentucky pursuant to KRS 454.210(2)(a) and other law.

29.     The amount in controversy exceeds the jurisdictional minimum of this Court.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000005 of 000008

5

Filed          23-CI-00122    03/08/2023          Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:17:50
PM
82451-35

30.     Venue is proper in this Court because the Property is located in, and the Deed confirming Memorial's purchase of the Property is recorded with the Jessamine County, Kentucky County Clerk.

31.     The Contract provides "Any litigation arising out of this Contract or relating thereto or the Property shall be brought in the state or federal court sitting in Nicholasville, Kentucky…" (Paragraph 20).

<strong><u>CAUSES OF ACTION</u></strong>

<strong>COUNT I - BREACH OF CONTRACT</strong>

32.     Each allegation set forth above is incorporated as if fully set forth herein.

33.     Through the Contract, the Affidavit, and the Assignment of Lease, the Defendants warranted and represented to the Plaintiffs that the February 17 Lease was in full force and effect and was enforceable.

34.     The Defendants, as well as Dry Care and Shor, now maintain that the February 17 Lease was never binding and enforceable, and is not in effect.

35.     The Judgment entered in the Jessamine Action concludes that neither the February 17 Lease nor the February 21 Leases were or are valid.

36.     The Defendants have therefore breached the Contract.

37.     The Plaintiffs have been and continue to be damaged by the Defendants' breach, including but not limited to Memorial's overpayment for the Property based on the Defendants' representation and covenant that the February 17 Lease was in full force and effect and enforceable; the loss of income from Dry Care; damage to, and theft of fixtures from, the Property; and the Plaintiffs' costs and attorneys' fees incurred in connection with the Jessamine Action.

6

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000006 of 000008

Filed          23-CI-00122    03/08/2023          Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL

05/23/2023 03:17:50

82451-35

## COUNT II - FRAUD

38.     Each allegation set forth is incorporated as if fully set forth herein.

39.     Having executed the Contract, the Affidavit and Assignment of Lease, which all state the February 17 Lease is in full force and effect, and having caused Memorial Kentucky's attorney, Shafran, to forward the February 17 Lease to the Plaintiffs' counsel, the Defendants knew or reasonably should have known that the Plaintiffs would rely and did rely upon their representations that the February 17 Lease was in full force and effect and enforceable at the time of the June 7, 2022, Closing.

40.     The Plaintiffs reasonably relied upon the Defendants' (and their attorney's) representations as to the February 17, 2022 Lease being in effect in deciding to enter the Contract.

41.     Had the Defendants (or their attorney) disclosed the purported February 21 Lease, the Plaintiffs would not have entered into the Contract.

42.     The Defendants (and their attorney) intentionally and fraudulently caused the Plaintiffs to believe that the February 17 Lease was in effect and enforceable in order to induce the Plaintiffs to purchase the Property so as to create a windfall of $1,140,000 to Memorial Kentucky at the Plaintiffs' expense.

43.     Skoblo's Affidavit of August 10, 2022 confirms he was aware the February 17 Lease was not in effect even though he stated the Lease was "in full force and effect" in the Owner's Affidavit.

44.     Skoblo also used the February 17 Lease to obtain a loan from the Bank as a further fraudulent representation and confirmation his August 10, 2022 Affidavit was knowingly false.

45.     The Plaintiffs have been and continue to be damaged by the Defendants' fraudulent misrepresentation inducing them to enter the Contract.

7

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000007 of 000008

Filed 23-CI-00122 03/08/2023 Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:17:50
PM
82451-35

## COUNT III – UNJUST ENRICHMENT

46. Each of the foregoing allegations is incorporated as if fully set forth herein.

47. In the event the Defendants assert that the Contract did not include their covenant and warranty that the February 17 Lease was in effect and was enforceable at the time of the Closing, then, in the alternative, the Defendants have been unjustly enriched by the Plaintiffs' overpayment for the Property in the amount of $1,140,000.

## COUNT IV - PUNITIVE DAMAGES AND ATTORNEY'S FEES

48. Each of the foregoing allegations is incorporated as if fully set forth herein.

49. The Defendants have acted oppressively, fraudulently, and maliciously, thereby entitling the Plaintiffs to an award of punitive damages in an amount of no less than $1,140,000, and an award of their attorney's fees and costs.

**WHEREFORE**, the Plaintiffs respectfully request the entry of a Judgment awarding them compensatory damages in an amount in excess of the jurisdictional limits of the Court; punitive damages; their attorney's fees and costs; and all other relief to which they may appear entitled.

MILLER, GRIFFIN & MARKS, P.S.C.
271 W. Short Street, Suite 600
Lexington, Kentucky 40507
Telephone:  (859) 255-6676
Facsimile:  (859)259-1562


By: *Thomas W. Miller*
    THOMAS W. MILLER
    twm@kentuckylaw.com
    ELLIOTT C. MILLER
    emiller@kentuckylaw.com

ATTORNEYS FOR PLAINTIFF

F:\Share\TWM\CASES\Worley - General\Worley-Memorial KY et al\Memorial Complaint 3.8.23.docxs

8

Filed 23-CI-00122 03/08/2023 Doug Fain, Jessamine Circuit Clerk

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

COM : 000008 of 000008

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

THIS CONTRACT FOR PURCHASE AND SALE (this "Contract"), is made and entered into on this the 25th day of March 2022 ("the Effective Date"), by and between **Rodney Worley** ("Purchaser"), and 500 Memorial Drive Kentucky, LLC, a Delaware limited liability company ("Seller")

## WITNESSETH:

Seller hereby agrees to sell to Purchaser, and Purchaser hereby agrees to purchase from Seller, that certain parcel of land having an address of 500 Memorial Drive, Nicholasville, Kentucky 40356, including all easements and other rights appurtenant thereto (the "Property"), upon the following written terms and conditions:

1. **PROPERTY PURCHASE PRICE AND PAYMENT.** At and subject to the conditions hereof, Purchaser agrees to pay, and Seller agrees to accept, as the Property Purchase Price at which the Property is to be purchased and sold, the sum of $4,000,000 (the" Property Purchase Price"), to be paid as follows:

A. **EARNEST MONEY DEPOSIT.** Purchaser will initially deposit with Miller, Griffin & Marks, P.S.C. (the "Escrow Agent") the sum of $50,000 (hereinafter referred to as "Earnest Money") on March 25, 2022 (the "Effective Date").. The Earnest Money shall be delivered to Seller and applied to the Property Purchase Price at the time of Closing, refunded, or forfeited to Seller, as hereinafter provided.

B. **PAYMENT AT CLOSING.** Upon the Closing of this transaction, the Purchaser shall pay the balance of the Property Purchase Price to Seller.

2. **CONDITIONS PRECEDENT — PURCHASER.** Purchaser's obligations hereunder are subject to the satisfaction (in Purchaser's sole discretion) of the conditions set forth in Subparagraphs A. and B. below by April 11, 2022 (the "Due Diligence Period").

If any of the conditions listed in Subparagraphs A. and B. below are not satisfactory to or waived by Purchaser (as determined in Purchaser's sole and absolute discretion), Purchaser shall have the right to terminate this Contract ("Purchaser's Termination Right") and receive a refund of the Earnest Money, provided that Purchaser sends written notice to Seller of such termination by April 11, 2022, in which case this Contract shall terminate, the Earnest Money shall be refunded to Purchaser, and neither party hereto shall have any further obligation or liability to the other hereunder,; otherwise (i) such conditions shall be deemed to have been waived, (ii) the Earnest Money shall be deemed to be non-refundable unless Seller defaults, and (iii) Purchaser shall be unconditionally obligated to purchase the Property in accordance with, and subject to, the other terms and conditions of this Contract unless Seller defaults. Those conditions are as follows:

A. **INSPECTION.** Purchaser being satisfied with the condition of the Property. Purchaser, its agents and/or representatives may perform inspections of the Property, including but not limited to, environmental, zoning, structural, engineering, economic, and its

1

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000001 of 000052



EXHIBIT
4



NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

suitability for Purchaser's Intended Use for manufacturing and storage (the "Intended Use"). Purchaser shall indemnify and hold Seller harmless from any costs, expenses, or claims arising out of or as a result of Purchaser's inspections, which indemnification shall survive this Contract and/or the Closing. Further, Purchaser shall restore the Property in the event any damage is caused by Purchaser's activity on the Property, which restoration obligation shall survive this Contract and/or the Closing.

B.    TITLE.    Purchaser, being satisfied that it after using its best effort can obtain a commitment for an owner's policy of title insurance issued by the Title Company, in which the Title Company shall agree to insure good and marketable fee simple title in the name of Purchaser after delivery of a general warranty deed to Purchaser from Seller, for the full amount of the Property Purchase Price, free and clear of all liens, encumbrances and exceptions to coverage such as non-delinquent real estate taxes, liens or encumbrances to be satisfied and released by Seller at or before Closing, and such easements or restrictions as will not impair Purchaser's use of the Property for its Intended Use. The commitment for such title insurance shall be ordered by Purchaser promptly after the date of this Agreement. The cost of such commitment and the cost of the title insurance policy shall be paid by Purchaser. Purchaser being satisfied that any leases of the Property are acceptable and consistent with Purchaser's Intended Use.

C.    ADDITIONAL CONDITIONS PRECEDENT.    In addition to due diligence conditions precedent set forth in lettered paragraphs A and B above, Purchaser's obligation to purchase the Property is conditioned upon:

    1.    Purchaser reaching a satisfactory agreement with Dry Care, LLC to modify the Industrial Lease Agreement dated February 17, 2022 between it and Seller ("Lease"). If a new lease satisfactory to Purchaser has not been entered into between Purchaser and Dry Care by April 11, 2022, Purchaser shall have the right to terminate this Contract and all of its obligations thereunder and to have its Earnest Money Deposit refunded in full.

3.    CLOSING AND CONVEYANCE.    The Closing of this transaction (the "Closing") shall occur on or before May 25, 2022. Purchaser shall notify Seller in writing of the exact date of the Closing. The Closing shall be held at a mutually agreeable location in Lexington, Kentucky.

4.    TAXES AND OTHER CHARGES.

A.    Seller shall pay all ad valorem real estate taxes ('"Taxes") levied with respect to the Property which become a lien and are due and payable prior to the date of the Closing. The Taxes for the year in which the Closing takes place are to be prorated to the date of the Closing. If the amount of such Taxes is not then ascertainable, credit and prorating shall be on the basis of the amount of the most recently ascertainable Taxes and tax rate.



Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000002 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

B.     Seller shall pay the transfer tax applicable to the deed, and Purchaser shall pay the deed recording fee if applicable. Each party shall pay its own attorney fees. All rents shall be prorated to the date of the Closing.

5.     **POSSESSION.**     Possession of the Property shall be delivered to Purchaser as of the Closing.

6.     **BROKERS.**     Seller and Purchaser hereby acknowledge that neither has employed a Broker to whom a fee will be owed upon the sale occurring.

7.     **NOTICES.**     Any notices given under the terms of this Contract shall be given in writing and shall be delivered by email or by overnight express mail by a national carrier (such as Federal Express or UPS) addressed as follows:

If to Seller:     500 Memorial Dr. Kentucky, LLC
5014 16 Ave Suite #9
Brooklyn NY 11204
yoel@bhyequities.com

If to Purchaser:     Rodney Worley
1300 John C. Watts Drive
Nicholasville, Kentucky 40356
rworley@actky.com

8.     **REPRESENTATIONS AND WARRANTIES OF SELLER.**  Seller represents and warrants to Purchaser as follows, which representations and warranties shall be deemed to have been reiterated and affirmed by Seller as of the Closing:

A.     Seller is, and shall be as of the Closing, the true and lawful owner of the fee simple interest in the Property, with full right and authority to sell and convey same;

B.     Seller has the full legal right and authority to enter into and execute this Contract and perform all of Seller's obligations hereunder;

C.     Seller has no actual knowledge of any condemnation action, special assessment or similar proceedings pending or threatened against the Property or any portion thereof, nor is Seller aware of (i) any governmental plans to appropriate or purchase the Property or any portion thereof or (ii) any actions, suits or proceedings pending or threatened against Seller affecting the Property or any portion thereof, at law or in equity or before or by any federal, state, municipal or other governmental agency, board, bureau, commission, department or instrumentality, domestic or foreign;

D.     Seller is not a foreign person within the meaning of Section 1445 of the

3

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000003 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Internal Revenue Code, as amended, and the regulations promulgated thereunder;

    E.    No party has a right of first refusal or option to purchase the property; and

    F.    Seller has disclosed to Purchaser all material facts relating to the Property and the transaction contemplated by this Contract, including, without limitations, any unusual site, geological, environmental or hazardous materials conditions; and

    G.    The only Lease of the Property is to Dry Care, LLC a true and complete copy of which has been delivered to Purchaser.

9.    **ITEMS AND DOCUMENTS TO BE DELIVERED AT CLOSING BY SELLER.** At the Closing, Seller shall execute and/or deliver or cause to be delivered to Purchaser each of the following:

    A.    General warranty deed duly executed and acknowledged by Seller conveying marketable, fee simple title to the Property;

    B.    Closing Statement executed by Seller;

    C.    Owner's Affidavit from Seller to Purchaser and the Title Company to the effect that there are no outstanding claims of laborers, suppliers or contractors for work performed for the benefit of, or materials supplied to, the Property, and Seller has good title to the Property;

    D.    Foreign Investment in Real Property Tax Act Certificate; and

    E.    Assignment of its rights under the Lease to Dry Care, LLC to the Purchaser.

10.    **ITEMS AND DOCUMENTS TO BE DELIVERED AT CLOSING BY PURCHASER.** At the Closing, Purchaser shall execute and/or deliver or cause to be delivered to Seller each of the following:

    A.    The balance of the Property Purchase Price;

    B.    Closing Statement executed by Purchaser; and

    C.    Such other documents and instruments as may be required by Seller to carry out the terms and intent of this Contract.

11.    **DEFAULT BY PURCHASER.** If Purchaser defaults hereunder, Seller shall have the right to terminate this Contract, whereupon Seller shall be entitled to retain all Earnest

4

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000004 of 000052



NOT ORIGINAL DOCUMENT 05/19/2023 03:55:45 PM 82451-35

Money as liquidated damages (and not as a penalty), and neither party shall have any further obligations hereunder.

**12. DEFAULT BY SELLER.** If Seller defaults hereunder, Purchaser shall as a sole and exclusive remedy have the right to either (a) declare this Contract terminated, in which event the Earnest Money shall be returned to Purchaser, or (b) enforce the terms of this Contract pursuant to the right of specific performance.

**13. GOVERNING LAW AND INTERPRETATION.** This Contract shall be construed and enforced in accordance with the laws of the Kentucky. Unless otherwise provided, all terms used herein shall have the meaning given them in ordinary English usage and as customarily used. Words in the masculine gender include feminine and neuter. The paragraph headings and titles of this Contract are not part of this Contract, having been inserted for convenience or reference only, and shall have no effect upon the construction or interpretation of any part of this Contract.

**14. PARTIAL INVALIDITY.** In the event any provision of this Contract shall be determined to be invalid or unenforceable, the remaining terms and conditions of this Contract which are not so invalid or unenforceable shall continue in full force and effect.

**15. WAIVER.** The waiver by any party hereto of a single breach of any covenant, representation or warranty contained herein shall not be deemed a continuing waiver of such breach nor a waiver of any breach of any other covenant, representation or warranty herein contained, but to the contrary, demand may be made at any time for the cure of any such breach.

**16. FURTHER ASSURANCES.** Each party agrees to such other or further action, including execution of additional documents, as may be reasonably necessary to consummate the transactions contemplated herein.

**17. BINDING AGREEMENT.** The offer contained herein, if accepted, shall form an agreement binding upon and inuring to the benefit of the parties hereto, and their successors and assigns.

**18. ASSIGNMENT.** Neither party's rights hereunder may be assigned without the consent of the other party, which consent shall not be unreasonably withheld, conditioned or delayed. Notwithstanding the foregoing, Purchaser shall have the right prior to the Closing, to assign its interest in and to this Contract to a limited liability company, corporation or other entity provided that a majority of the ownership interest of such entity is owned by him and others.

**19. COUNTERPARTS.** This Contract may be executed in one or more counterparts.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

5



EXH : 000005 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

**20.    ATTORNEYS' FEES; JURY TRIAL WAIVER; JURISDICTION AND VENUE.** In the event either party files a legal action to enforce or interpret this Contract, the prevailing party shall be entitled to reimbursement from the other for its reasonable attorneys' fees and costs incurred in connection with said action, in addition to any other sums recoverable by, or remedies available to, such prevailing party. In the event of any litigation between the parties relating to this Contract or the Property, both Purchaser and Seller waive any right to a trial by jury in any such litigation. Any litigation arising out of this Contract or relating thereto or to the Property shall be brought in the state or federal court sitting in Nicholasville, Kentucky, and both Purchaser and Seller consent to the sole and exclusive jurisdiction and venue of such courts.

**21.    TIME OF ESSENCE.**    Time shall be of the essence with regard to all dates and deadlines set forth herein.

**22.    AMENDMENTS.**    No modification or amendment of this Contract shall be of any force or effect unless in writing and executed by each party hereto. To the extent that escrow, Closing or settlement instructions or other similar documents are inconsistent with the terms and conditions of this Contract, the terms of this Contract shall control and shall survive the recordation of the deed.

**23.    ENTIRE AGREEMENT.**    This Contract contains the entire agreement between Seller and Purchaser with respect to the subject matter hereof, which supersedes all other previous or contemporaneous written or oral negotiations, commitments or writings.

PURCHASER:

RODNEY WORLEY

SELLER:

500 MEMORIAL DR. KENTUCKY, LLC

By:_____

Its:_____

F:\Share\TWM\CASES\Worley - General\Worley Contract for Purchase and Sale-rev2-clean-3 24.22.docx

6

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000006 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

# INDUSTRIAL LEASE AGREEMENT

THIS INDUSTRIAL LEASE AGREEMENT (the "Lease") is made and entered into effective Feb.17, 2022, by and between **500 Memorial Dr Kentucky LLC** (hereinafter referred to as "Landlord"), and **Dry Care**, (hereinafter referred to as "Tenant").

A. Landlord owns certain real property located in **Nicholasville, KY,** having the common address of **500 Memorial Dr Nicholasville, KY 40356** (the "Property"), which Property is more particularly described and depicted in Exhibit A attached hereto and made a part hereof, and which Property constitutes a portion of a larger tract of land owned by Landlord (the "the property ") also depicted on Exhibit A.

B. Landlord wishes to lease part of the Property to Tenant, and Tenant wishes to lease part of the the Property from Landlord, for the purposes contemplated hereby and on the terms and conditions and for the rental hereinafter set forth.

C. The parties hereto now wish to describe and define their respective rights, obligations and covenants with respect to such leasing.

NOW, THEREFORE, in consideration of the payment of the rental provided for herein and the keeping and performance of the covenants and agreements hereinafter contained, Landlord hereby agrees to lease and demise unto Tenant and Tenant hereby leases and takes from Landlord the premises herein described, for the Term, at the rental and subject to and upon all the terms, covenants, conditions and agreements set forth herein.

**1. Leased Premises.** Landlord hereby leases to Tenant and Tenant hereby lets and rents from Landlord the Property building 1&3 & 35000 Sf of building 2 as described and depicted on Exhibit B, comprising a part of Landlord's property, for the sole and specific purpose of operating the Facility (defined below), together with those rights, privileges, easements and appurtenances to these said premises which are necessary for the operation of the Facility, and together with rights of access, ingress and egress between the Property and the main entrance to the building , (collectively, the "Leased Premises").

**2. Primary Term.** The primary term of this Lease shall be for a period of fifteen (15) years (the "Primary Term"). The Primary Term of this Lease and Tenant's obligation to pay Rent (defined below), shall commence on Feb.17, 2022 (the "Commencement Date"), and shall terminate on Jun, 30 2036 (the "Termination Date"), unless sooner terminated pursuant to the provisions hereof, or unless renewed and extended as hereinafter provided.

**3. Renewal Option.** Provided that Tenant is not otherwise then in default, Tenant shall have the option ("Renewal Option") to renew and extend the term of this Lease for up to three (3) additional periods of five (5) years each (each a "Renewal Period"), the first Renewal Period commencing on the expiration of the Primary Term, and each subsequent Renewal Period commencing on the expiration of the immediately preceding Renewal Period. In no event shall the Term of this Lease extend beyond June 30, 2051. The Renewal Option may be exercised only by delivery of written notice thereof (the "Option Notice") to Landlord not less than one hundred eighty (180) days prior to the expiration of the Primary Term or Renewal Period, as applicable; provided, however, if at any time subsequent to delivery of the Option Notice, but prior to the

-1-


EXHIBIT
13

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000007 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

commencement of the Renewal Period, Tenant shall be in default beyond any applicable cure periods under this Lease, Landlord may, in its sole and absolute discretion, revoke and cancel Tenant's right to renew and extend the term of this Lease. Throughout the Renewal Periods, all terms, covenants and conditions of this Lease shall remain in full force and effect, and Tenant shall accept the Leased Premises in its then "AS IS" condition at the expiration of the Primary Term and each Renewal Period. Notwithstanding anything contained herein to the contrary, the parties may, upon mutual agreement, terminate this Lease, with or without cause, which termination shall become effective one hundred eighty (180) days following mutual agreement of the parties. As used in this Lease, the term "Term" shall mean the Primary Term and each duly exercised Renewal Period, as well as any holdover period.

**4. Base Rent.** As base rental for the Leased Premises ("Rent") for the Primary Term, Tenant hereby agrees to pay Landlord, without notice, offset or deduction, the sum of **one hundred Seventy Four thousand and five hundred Fifty Seven Dollars ($174,557.00)**, based upon a base-rental rate of **$2.32 PPSF** for the first Lease Year of the Primary Term and increased at the rate of three percent (3%) every third Lease Year thereafter see exhibit C. As used in this Lease, the term "Lease Year" shall mean each twelve (12) month period beginning on the Commencement Date and each subsequent anniversary thereof. Rent shall be due and payable during the Primary Term as well as during each Renewal Period Rental on the first day of each calendar month, commencing on Aug 1, 2021, and shall be paid in accordance with the following schedule: see exhibit C

Rent for any partial calendar month shall be prorated on the basis of the actual number of days in such partial month. All Rent payments and all other payments which may become due and payable to Landlord hereunder shall be made by Tenant payable to Landlord and shall be delivered to Landlord at the address set forth in Section 39 below, or to such other address as Landlord may direct by written notice to Tenant.

**5. Security Deposit.** Currently Tenant has deposited with Landlord a Security Deposit amounting to **Fourteen Thousand Five Hundred Forty Six Dollars and Forty Two cents ($14,546.42)**. The Security Deposit will be held by Landlord, not as prepaid Rent but as security for the faithful performance of every provision of this Lease to be performed by Tenant. If Tenant defaults with respect to any provision of this Lease, including, but not limited to, the provisions of the payment of Rent and any other sums which become due and payable hereunder, Landlord may (but shall not be required to) use, apply or retain all or any part of the Security Deposit for the payment of Rent or such sums in default, or for the payment of any amount which Landlord may spend or become obligated to spend by reason of Tenant's default or to compensate or reimburse Landlord for any other loss or damage which Landlord may suffer or incur by reason of Tenant's default. If any portion of the said Security Deposit is so used or applied, Tenant shall, within ten (10) days after written demand therefor, deposit cash with Landlord in an amount sufficient to restore the Security Deposit to its original amount, and Tenant's failure to do so shall constitute a material Event of Default under this Lease. Landlord shall not be required to keep the Security Deposit separate from its general funds, and Tenant shall not be entitled to any interest on such funds. If Tenant shall fully and faithfully perform every provision of this Lease to be performed by it, the Security Deposit or any remaining balance thereof shall be returned to Tenant (or Tenant's assignee) at the expiration of the Term and after Tenant has vacated the Leased Premises in

-2-

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000008 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

accordance with the terms hereof; however, in no event shall Landlord be under any obligation to return the remaining Security Deposit earlier than sixty (60) days after expiration of the Term.

**6. Use and Compliance.** Tenant shall use the Leased Premises solely for the operation of a used **Manufacturing hygiene products** (the "Facility") and for such other lawful purposes as may be reasonably incidental thereto, and for no other purposes.

(a) Tenant shall not do or permit anything to be done on or about the Leased Premises, nor bring or keep anything thereon which will in any way increase the existing insurance rates or affect any fire or other insurance upon the Leased Premises (unless Tenant shall pay an increased premium as a result of such use or acts), or cause a cancellation of any insurance policy covering the Leased Premises, or any articles which may be prohibited by a standard form policy of fire insurance, without the prior written consent of Landlord, which consent shall be in Landlord's sole discretion.

(b) Tenant agrees not to permit nor suffer any conduct or activity, which would adversely affect Landlord's operations, certification of occupancy or various operating permits for the property or any portion thereof.

(c) Tenant shall not cause, maintain or permit any public or private nuisance in, on, or about the Leased Premises. Tenant shall not commit or suffer to be committed any waste in, on or about the Leased Premises. Tenant shall not operate the Facility or conduct any activities thereon which may interfere with the lawful activities and businesses conducted by Landlord or any other tenant, licensee or invitee of Landlord in or on the property or any portion thereof, or which may threaten or adversely affect the health or safety of any person.

(d) Tenant shall at all times provide adequate supervision and operation of its Facility and its other activities on the Leased Premises, and it shall at all times comply with, and suffer no violation by its employees, agents, contractors or visitors of all licenses and permits held or obtained by Landlord with respect to the property or any licenses and permits held or obtained by Tenant with respect to the Facility and Tenant's operations thereon, and all laws, requirements, rules, orders, ordinances and regulations of the federal, state, county, city governments, and of each and every department, bureau and duly authorized official thereof, and of any successor or future governmental authority, department, bureau and duly authorized official thereof, corporation or other body or organization possessing similar authority and exercising similar functions, which laws, requirements, rules, orders, ordinances and regulations are now operative, or which at any time during the Term may be operative, and in force and effect and applicable to Tenant's use of the Leased Premises, including, without limitation, the Occupational Safety and Health Act ("OSHA"), as well as any and all Environmental Laws (defined below).

**7. Rail Facilities.**

(a) Landlord reserves right to use for itself or other tenants rail in event will need coordination from tenant landlord and tent shall work in good faith to coordinate

**8. Suitability and Acceptance of Leased Premises.** Tenant acknowledges that it has been in possession of the Leased Premises prior to the Commencement Date and has had an adequate opportunity to inspect the same. Tenant further acknowledges that neither Landlord nor

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000009 of 000052

-3-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

its agents have made any representation or warranty, express or implied, with respect to the suitability of the Leased Premises for the conduct of Tenant's business, but that Tenant is relying on its own inspection and investigation as to such suitability. Except as specifically provided herein, Tenant accepts the Leased Premises "AS IS", and that the taking of possession of the Leased Premises by Tenant shall be deemed to be conclusive evidence between the parties hereto that the Leased Premises was in satisfactory and acceptable condition and suitable for the intended purposes and stated uses of Tenant. Any required site air quality permit, storm water discharge permits, electrical and special use permits, as well as all other licenses, certificates and permits required for the operation of the Facility and Tenant's business shall be Tenant's sole responsibility and at Tenant's sole cost and expense, and Landlord has made no representations with respect to the availability of the same.

## 9. Taxes.

(a)    Tenant shall pay, before delinquency, all taxes in preparation for its leased space , assessments, license fees and public charges levied, assessed or imposed upon or measured by the value of its business operation, including, but not limited to, the Facility, and any furniture, fixtures, leasehold improvements, equipment and other property of Tenant at any time situated on or installed in the Leased Premises by Tenant ("Tenant's Taxes"). If at any time during the Term of this Lease any of the Tenant's Taxes are assessed as part of the Leased Premises, Tenant shall pay to Landlord upon demand, the amount of such Tenant's Taxes as may be levied against the Leased Premises. Landlord will attach hereto a copy of the Landlord's annual tax bill spreadsheet.

(b)    Landlord shall be liable for and shall promptly pay when due all real property and ad valorem taxes assessed against and levied upon the real property underlying the Leased Premises ("Property Taxes"), except any Tenant's Taxes and except any taxes which by law are assessed to and required to be paid by Tenant, which taxes shall be paid by Tenant. Landlord shall promptly notify Tenant with respect to any tax notice or other documentation of communication received related to Tenant's Taxes or other taxes payable by Tenant assessed against the Leased Premises. Following receipt of the annual tax bill from the **Nicholasville** Treasurer's Office, Landlord shall reasonably estimate Tenant's share of annual Property Taxes attributable to the Property, and shall provide Tenant with an invoice therefore. Tenant shall remit Tenant's share of the annual Property Taxes to Landlord no later than thirty (30) days following receipt of Landlord's invoice.

(c) Nothing herein contained shall require the Tenant to pay or be liable for any gift, inheritance, estate, franchise, income, profit, capital or similar tax imposed on Landlord. Landlord cannot bill late fees to Tenant due to its own negligence of not paying taxes in a timely manner. Tenant may, at its sole cost and expense (in its own name only), dispute and contest any tax levied against the Leased Premises so far as such tax relates to liability against the Tenant, and in such case, such disputed item need not be paid until finally adjusted to be valid. At the conclusion of such contest, Tenant shall pay the items contested to the extent that they are held valid, together with all court costs, interest and penalties related thereto. Landlord reserves the right to pay such items if Landlord reasonably believes that its interests in the Leased Premises are at risk or if Landlord reasonably believes that there is a substantial likelihood that Tenant will not prevail on such contest, and Tenant will reimburse Landlord for all such payments made upon demand.

-4-

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000010 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

**10.** <u>Utilities</u>.   Except as provided below, Landlord shall supply and provide, in connection with the reasonable use and operation of the Leased Premises and Facility as is , the following utilities connections to the Leased Premises: (a) Volt power drop; (b) a domestic capacity natural gas line; and (c) a three-quarter inch (3/4") water tap for supply of water for Tenant's use at the Leased Premises.   Tenant further agrees to assume sole responsibility for providing for any and all other utilities with respect to Tenant's use and operation of the Facility and the Leased Premises, including but not limited to use, connection, hook-up and standby fees, monthly fees and charges and penalties for discontinued or interrupted service.   Tenant assumes sole responsibility for paying all utility charges which shall be paid directly to the entity collecting the same.  Landlord shall not be liable to Tenant for any loss, damage or expense which Tenant may sustain in the event that any utility or other service provided or to be provided to the Leased Premises is not available or shall fail or be interrupted or curtailed from any cause whatsoever, nor shall any such unavailability, failure, interruption or curtailment constitute constructive eviction of Tenant or excuse or relieve Tenant from its obligations pursuant to this Lease.

**11.** <u>Maintenance and Repairs</u>. Tenant agrees at all times, at its sole cost and expense, to repair, replace and maintain in good, workable and tenantable condition the Leased Premises and its appurtenances, the Facility, and other machinery and equipment now or hereafter located on the Leased Premises, and all such items of repair, maintenance, alteration and improvement or reconstruction as may at any time or from time to time be required in order to comply with the provisions of all licenses, permits, laws, statutes, ordinances and regulations affecting the Leased Premises, the Facility and/or the operation thereof and the requirements of any governmental entity having jurisdiction therefore.  If Tenant refuses or neglects to make repairs and/or maintain the Leased Premises, or any part thereof, in a manner reasonably satisfactory to Landlord, as well as to maintain the Facility in a good and operable condition at all times (except for such down times as may be required for routine repair and servicing) and in compliance with all laws applicable thereto, Landlord shall have the right, but shall not be obligated, after giving Tenant ten (10) days written notice of its election to do so, to make such repairs or perform such maintenance on behalf of and for the account of Tenant.  In such event the cost of such work shall be paid by Tenant within ten (10) days after Landlord sends Tenant a statement therefor.  Tenant agrees that Landlord may, at Landlord's discretion, direct that an area of Leased Premises be cleaned up or that specific items of maintenance be performed, at any time.

**12.** <u>Condition Upon Surrender</u>.  Upon any termination or surrender of the Leased Premises, Tenant shall remove the Facility, any and all materials stored or processed thereon, and any other equipment, machinery and personal property of Tenant, and shall deliver the Leased Premises to Landlord in good and clean condition and in compliance with all laws applicable thereto, including, without limitation, all Environmental Laws.  In the event that Tenant shall fail to remove its Facility, materials and any other equipment, machinery and personal property within thirty (30) days following the expiration or other termination of this Lease, then any such remaining property shall be deemed abandoned and may be retained or disposed of by Landlord without any liability or accountability to Tenant; provided that Tenant shall remain fully liable to Landlord for all costs and expenses incurred by Landlord in disposing of the same. Tenant bears no responsibility to remove the containment pad or the fence.

**13.** <u>Alterations</u>.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000011 of 000052

-5-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

(a) Tenant shall not, without Landlord's prior written consent, which consent shall not be unreasonably withheld, make any alterations, improvements or additions, in, on or about the Leased Premises, except for non-structural alterations not exceeding $5000.00 in cost in the aggregate. As a condition to giving its consent, Landlord may require, among other things, that Tenant agree to remove any such alterations, improvements, additions, or utility installations at the expiration of the Term, and to restore the Leased Premises to its prior condition.

(b) Before commencing any work relating to alterations, additions and improvements affecting the Leased Premises, Tenant shall notify Landlord in writing of the expected date of commencement thereof. Landlord shall then have the right at any time and from time to time to post and maintain on the Leased Premises such notices as Landlord reasonably deems necessary to protect the Leased Premises and Landlord from mechanics' liens, materialmen's liens or any other liens. In any event, Tenant shall pay, when due, all claims for labor or materials furnished to or for Tenant at or for use in the Leased Premises. Tenant shall not permit any mechanics' or materialmen's liens to be levied against or attach to the Leased Premises, and shall indemnify, defend and hold Landlord harmless, from and against any such liens or claims for payment, for labor or material furnished to Tenant or claimed to have been furnished to Tenant or to Tenant's agents or contractors in connection with work of any character performed or claimed to have been performed on the Leased Premises by or at the direction of Tenant.

## 14. Insurance.

(a) Tenant shall comply with all applicable laws and regulations of the State of KY relating to workers' compensation insurance and occupational disease compensation for every worker and employee who performs work for Tenant on the Leased Premises in connection with this Lease. Tenant further agrees to ensure that any independent contractor hired to perform work on the Leased Premises in connection with this Lease shall have similar insurance in full force and effect. Tenant further agrees to comply with all applicable laws and regulations with respect to labor employed upon the Leased Premises including, without limitation, all applicable laws and regulations relating to wages and hours and the withholding of payroll taxes and contributions.

(b) Tenant further agrees that it shall carry, at its sole expense, a commercial general liability policy, including insurance against assumed or contractual liability under this Lease with respect to the Leased Premises and the operations of Tenant on or about the Leased Premises in which the limits with respect to personal liability and property damage shall not be less than Two Million Dollars ($2,000,000.00) per occurrence. Any policy proceeds payable in respect of Tenant's trade fixtures, merchandise and personal property shall be used for the repair or replacement of the property damaged or destroyed unless this Lease shall cease and terminate under the provisions of Section 17 hereof.

(c) Tenant understands that Landlord shall not carry insurance against damages or losses to Landlord's interest in the Property caused by fire and other perils. Tenant further understands and acknowledges that any such insurance shall be for the sole benefit of Landlord, and Tenant shall have no claim or right to any proceeds which might be paid under such policies. Landlord advises Tenant to obtain such insurance as Tenant deems necessary or desirable to protect Tenant's interests in any equipment, fixtures, equipment and other improvements of Tenant on the Leased Premises.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000012 of 000052

-6-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

(d) All policies of insurance carried by Tenant pursuant hereto shall be issued by insurance companies acceptable to Landlord and which are qualified to do business in the State of KY and shall not contain a deductible unless such deductible is expressly approved in writing by Landlord. All policies of insurance shall have attached thereto a standard loss payee clause naming Landlord as a loss payee on all property insurance policies, and as an additional insured under all liability insurance policies, shall provide for waiver by the insurer of all rights and subrogation, and shall otherwise be in form and substance reasonably satisfactory to Landlord. Executed copies of such policies of insurance or acceptable certificates thereof shall be delivered to Landlord within ten (10) days after the Commencement Date, and thereafter executed copies of renewal policies or certificates thereof shall be delivered to the Landlord within thirty (30) days prior to the expiration of the term of each such policy. All liability policies shall contain a provision that Landlord, although named as an additional insured, shall nevertheless be entitled to recover under said policies for any loss occasioned to it, its employees, agents and contractors by reason of the negligence of Tenant. As often as any such policy shall expire or terminate, renewal or additional policies shall be procured or maintained by Tenant in like manner and to like extent. All policies of insurance or certificates thereof delivered to Landlord must specify thereon the amount of deductible, if any, and shall contain a provision that the company writing the policy shall give to Landlord thirty (30) days notice in writing in advance of any cancellation or lapse or the effective date of any reduction in the amounts of insurance. All liability and property damage and other casualty policies shall be written as primary policies, not contributing with, and not in excess of, any coverage which Landlord may carry in its discretion.

(e) Tenant agrees that it will not, at any time during the Term, do anything in or about the Leased Premises which will in any way tend to increase the insurance rates upon any insurance from time to time carried by Landlord in respect of the Leased Premises or the Main Yard. Tenant agrees to pay to Landlord forthwith upon demand the amount of any increase in premiums for insurance against loss by fire or other casualty that may be charged during the Term on the insurance carried by Landlord on the Main Yard of which the Leased Premises are a part resulting from the foregoing or from Tenant doing any act in or about said Leased Premises which does so increase the insurance rates, whether or not Landlord shall have consented to such act on the part of Tenant.

(f) Landlord and Tenant hereby waive any rights each may have against the other on account of any loss or damage occasioned to Landlord or Tenant, as the case may be, or their respective property or the Leased Premises, arising from any risk which is covered by the property insurance actually maintained by the other party; and the parties each, on behalf of their respective insurance companies insuring the property of either Landlord or Tenant against any such loss, waive any right of subrogation that it may have against Landlord or Tenant, as the case may be. The foregoing waivers of subrogation shall be operative only so long as available in the State of KY and provided further that no such policy is invalidated thereby.

15. **Inspections.** Landlord, Landlord's mortgagee (if any), and their respective agents and representatives, shall have the right, with prior notice, to enter upon and inspect the Leased Premises at any time during reasonable business hours, for the purpose of ascertaining the conditions of the Leased Premises, Tenant's compliance with the terms of this Lease and all applicable Environmental Laws, and/or in order to make such repairs or take such actions as may be permitted to be made by the Landlord under the terms of this Lease. During the period that is

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000013 of 000052

-7-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

four (4) months prior to the end of the Primary Term or any Renewal Period hereof, Landlord, Landlord's agents and representatives shall have the right to enter upon the Leased Premises at any time during reasonable business hours for the purpose of showing the Leased Premises to prospective tenants or purchasers, and shall have the right to erect on the Leased Premises a suitable sign indicating that the Leased Premises is "for lease" or "for sale." Landlord shall have the right to post and keep posted thereon notices of non-responsibility or such other notices which Landlord may deem to be proper for the protection of Landlord's interest in the Leased Premises.

**16.    Zoning and Permits.**

(a) The parties acknowledge that Tenant shall be required to obtain any and all licenses, permits and approvals with respect to its activities on the Leased Premises and to its operation of the Facility thereon ("Approvals"), and Tenant agrees to make any necessary applications in its own name or, at Landlord's sole option, to authorize Landlord and join with Tenant in making such applications, as may be required to obtain such Approvals and to permit Tenant to commence and prosecute its use and operations on the Leased Premises (as the same may be configured from time to time). Landlord agrees to execute all documents and agreements which may be reasonably required of it as a condition to obtaining such Approvals, and to provide reasonable cooperation with Tenant in connection therewith. The parties further acknowledge that Tenant currently holds _____ Air Quality Permit No. _____ for the operation of its Facility on the Leased Premises, and Tenant hereby agrees to prosecute its use and operation of the Leased Premises in strict accordance with such permit and all other Federal, state and local permits held by Landlord as they apply to the Leased Property.

(b) All costs, fees and charges which shall be incurred or required in connection with Tenant seeking and obtaining such Approvals shall be the sole obligation of Tenant.

(c) Tenant shall provide Landlord, not less frequently than annually, and otherwise upon written request of Landlord, with copies of any and all permits, waste disposal records, and other Approvals relating to the operation of the Facility and Tenant's activities on the Leased Premises and Tenant's compliance with all applicable Environmental Laws.

**17.    Damage or Destruction.** In the event the Leased Premises are damaged by fire or other insured casualty to an extent less than thirty percent (30%) of the replacement cost thereof, as reasonably determined by Landlord, the damage shall be repaired by and at the expense of Tenant, provided such repairs can, in Landlord's reasonable opinion, be made within one hundred twenty (120) days after the occurrence of such damage without the payment of overtime or other premiums. If repairs cannot, in Landlord's reasonable opinion, be made within one hundred twenty (120) days, Tenant may nevertheless elect, at its option, to make them within a reasonable time and in such event, this Lease shall continue in effect. If Tenant does not so elect to make such repairs which cannot be made within one hundred twenty (120) days, or if the damage to the Leased Premises shall exceed thirty percent (30%) of the replacement cost, then either party may, by written notice to the other, terminate this Lease as of the date of the occurrence of such damage, provided that Tenant shall remain liable for any obligations that, by their terms, survive termination. Unless this Lease shall be so terminated, there shall be no abatement of Rent, and Landlord shall have no liability to Tenant by reason of any injury to or interference with Tenant's business or property arising from occurrence of any such casualty or the making of any repairs, alterations or improvements in or to any portion of the Leased Premises or in or to fixtures,

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000014 of 000052

-8-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

appurtenances and equipment therein. Tenant understands that Landlord will not carry insurance of any kind on Tenant's Facility, fixtures, machinery or equipment removable by Tenant under the provisions of this Lease, and that Landlord shall not be obligated to repair any damage thereto or replace the same. Landlord shall not be required to repair any injury or damage by fire or other cause, or to make any repairs or replacements of improvements installed in the Leased Premises by or for Tenant.

18. **Hazardous Materials.** Tenant shall, at its sole cost and expense, comply with all Federal, state and local laws from time to time in effect concerning the management, use, generation, storage, transportation, presence, discharge or disposal of any regulated hazardous, toxic, radioactive or carcinogenic materials, substances or wastes, including without limitation petroleum products and fractions thereof (collectively, "Hazardous Materials"), including all statutes and ordinances and the regulations, orders, decrees now or hereafter promulgated thereunder (collectively, "Environmental Laws"). Tenant shall cause any and all Hazardous Materials brought onto or used, processed, generated, stored or discharged at the Leased Premises after the date hereof, as well as any Hazardous Materials existing in the Leased Premises as of the date hereof that is disturbed, released or discharged by Tenant's improvement, alteration or use of the Leased Premises, to be used and/or removed from the Leased Premises and transported for disposal in accordance with applicable Environmental Laws. Landlord shall have the right to enter the Leased Premises from time to time to conduct tests, inspections and surveys concerning Hazardous Materials and to monitor Tenant's compliance with its obligations concerning Hazardous Materials and Environmental Laws. Tenant shall immediately notify Landlord in writing of any voluntary cleanup or removal action instituted or proposed by Tenant, any enforcement, cleanup, removal or other governmental or regulatory action instituted or threatened, or any claim made or threatened by any person against Tenant or the Leased Premises relating to any Hazardous Materials or any Environmental Laws. Tenant shall also supply to Landlord as promptly as possible, and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating in any way to the Leased Premises or Tenant's use thereof and concerning Hazardous Materials or Environmental Laws. Tenant shall not negotiate or enter into any settlement agreement, consent decree or other compromise in respect of Hazardous Materials or Environmental Laws affecting the Leased Premises except after giving Landlord prior written notice and a full and fair opportunity to appear, intervene or otherwise assert and protect Landlord's rights and interests. Tenant shall indemnify and hold harmless Landlord as provided in Section 19 against and from any and all claims or liabilities arising from Tenant's breach or default in the performance of its obligations under this Section 18 or under any other provision of this Lease. Tenant's obligations under this Section 18 shall survive the expiration or earlier termination of this Lease.

19. **Liability and Indemnification.** Tenant covenants with Landlord that Landlord shall not be liable for any damage or liability of any kind or for any injury to or death of persons, or damage to property of Tenant or any other person occurring from and after delivery of possession of the Leased Premises, from any cause whatsoever, by reason of the use, occupancy and enjoyment of the Leased Premises, or the operation of the Facility, by Tenant or any person thereon or holding under Tenant, or to Tenant's invitees or visitors, and that Tenant shall indemnify, defend, protect and save Landlord harmless from all losses, costs, damages, claims and liability whatsoever on account of any such real or claimed damage or injury and from all liens,

-9-

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000015 of 000052

claims and demands arising out of the use and occupancy of the Leased Premises and its facilities, or any repairs, alterations or improvements which Tenant may make or cause to be made upon the Leased Premises, or on account of Tenant's negligence or Tenant's failure to perform its obligations set forth herein, but Tenant shall not be liable for damage or injury occasioned by the gross negligence of Landlord or its designated agents, employees or contractors, except to the extent otherwise covered by insurance Tenant is required to provide. This obligation to indemnify shall survive the termination or earlier expiration of this Lease and shall include reasonable attorneys' fees and investigation costs and all other reasonable costs, expenses and liabilities incurred in connection therewith. Tenant understands and acknowledges that Landlord is not required to provide and does not provide any security services for the Main Yard or for the Leased Premises. Landlord shall have no responsibility for and Tenant agrees to hold Landlord harmless from and against any damage or loss caused by theft or vandalism to Tenant's property or the Leased Premises.

## 20. Condemnation.

(a) **General.** In the event the entire Leased Premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, this Lease shall terminate and expire as of the date Tenant is actually dispossessed, and Landlord and Tenant shall each thereupon be released from any liability thereafter accruing hereunder (except for those liabilities which survive termination). In the event the Leased Premises shall partially taken under the power of eminent domain by any public or quasi-public authority, and such partial condemnation shall materially impair Tenant's ability to operate the Facility as contemplated hereunder, as reasonably determined by Landlord or Tenant, then either Landlord or Tenant shall have the right to terminate this Lease as of the date Tenant is required to vacate the portion of the Leased Premises so taken, upon giving notice in writing of such election within thirty (30) days after Landlord gives Tenant written notice that said Leased Premises have been so appropriated or taken. In the event of such termination, both Landlord and Tenant shall thereupon be released from any liability thereafter accruing hereunder (except for those liabilities which survive termination). Landlord agrees immediately after learning of any appropriation or taking to give to Tenant notice in writing thereof. Landlord shall be entitled to the entire award or compensation paid in connection with any taking, and Tenant shall have no claim thereto; provided that Tenant shall have the right to pursue a separate award to receive compensation or damages for its trade fixtures and personal property and relocation costs, and such right shall not be affected in any manner hereby.

(b) **Effect on Lease.**

(i) If this Lease is terminated in either manner provided in subparagraph (a) above, then Landlord and Tenant shall be relieved of any further obligations hereunder except for those which by their terms are intended to survive or be performed following any such termination.

(ii) If neither Landlord nor Tenant elect to terminate this Lease, Tenant shall remain in that portion of the Leased Premises which shall not have been appropriated or taken as herein provided. As soon as reasonably possible thereafter, the Leased Premises on the land remaining shall be restored by Tenant.

-10-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

(iii)    For the purpose of this Section 20 only, a voluntary sale or conveyance in lieu of condemnation, but under threat of condemnation, shall be deemed an appropriation or taking under the power of eminent domain.

(iv)    Tenant hereby waives any statutory rights of termination which may arise by reason of any partial taking of the Leased Premises under the power of eminent domain.

### 21.    Assigning, Subletting, Change In Ownership.

(a) Tenant shall not have the right to assign this Lease or to sublet the whole or any part of the Leased Premises directly or indirectly, without the prior written consent of Landlord, which consent shall be within the sole discretion of Landlord. Consent to one assignment, subletting or other transfer shall not be deemed to constitute consent to any subsequent assignment, subletting or other transfer. Upon the occurrence of an event of default beyond any applicable cure period by Tenant, if the Leased Premises or any part thereof are then assigned or sublet, Landlord in addition to any other remedies herein provided, or as provided by law, may at its option, collect directly from such assignee or subtenant, all rents becoming due to Tenant under such assignment or sublease and apply such Rent against any sums payable by Tenant hereunder. No subletting or assignment, even with Landlord's consent, shall relieve Tenant from its obligations to pay Rent and to perform all of the other obligations to be performed by Tenant hereunder.

(b) Any purported assignment or subletting contrary to the provisions hereof without Landlord's written consent shall be void and of no effect.

### 22.    Quiet Enjoyment.
Landlord covenants that it owns fee simple title to the Property, subject to easements, covenants, rights of way, reservations, restrictions and other matters of record, if any. Landlord represents and warrants that it has full right and authority to enter into this Lease and that Tenant, upon paying the Rent herein set forth and performing its other covenants and agreements herein set forth, shall be entitled to peaceably and quietly have, hold and enjoy the Leased Premises for the Term hereof without hindrance or molestation from Landlord, subject to the terms and provisions of this Lease.

### 23.    Bankruptcy or Insolvency.
Tenant agrees and declares that in the event (i) all or substantially all of Tenant's assets are placed in the hands of a receiver or trustee, and such receivership or trusteeship remains undischarged for a period of thirty (30) days after notice to Tenant, or (ii) Tenant becomes insolvent or makes an assignment for the benefit of creditors or is adjudicated a bankrupt, or (iii) Tenant institutes any proceedings under the Bankruptcy Code as the same now exists or under any amendment thereto which may hereafter be enacted, or under any other act relating to the subject of bankruptcy, including, but not limited to, any proceeding wherein Tenant seeks to be adjudicated a bankrupt, or to be discharged of its debts, or to seek or effect a plan of liquidation, composition, extension or reorganization, or (iv) any involuntary proceeding is filed against Tenant under any such bankruptcy laws and such proceeding not be removed within ninety (90) days thereafter, then this Lease and any interest of Tenant in and to the Leased Premises shall not become an asset in any of such proceedings and, in any such events and in addition to any and all rights or remedies of Landlord hereunder or by law provided, it shall be lawful for Landlord to declare the Term ended and to reenter the Leased Premises and take

-11-

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000017 of 000052

possession thereof and remove all persons therefrom, and Tenant shall have no further claim thereon or hereunder.

24. **Events of Default**. Each of the following events shall be deemed to be and shall constitute an event of default by Tenant under this Lease:

(a) Tenant shall fail to pay, when due, any installment of Rent hereby reserved, or any other payments which may become due hereunder. Tenant shall have fifteen (15) days before it is in monetary default;

(b) Tenant shall fail to perform or observe any term, provision or covenant of this Lease, other than the payment of Rent or other sums, and shall not cure such failure within thirty (30) days after written notice thereof to Tenant, or within such additional time as may be reasonably required to cure such default, if it is of such a nature that it cannot be cured within said thirty (30) day period, provided that Tenant shall commence to effect such cure and shall thereafter proceed with all diligence to complete such cure, provided such cure shall be completed in any event within sixty (60) days;

(c) Tenant shall become bankrupt or insolvent, or shall make a transfer of its assets to creditors, or shall make an assignment for the benefit of creditors;

(d) Tenant shall attempt to assign or sublease its interests in the Leased Premises or under this Lease, without the prior written consent of Landlord;

(e) Tenant shall abandon or vacate the Leased Premises or any significant portion thereof or shall fail to take possession of the Leased Premises within thirty (30) days following the Commencement Date or subsequent tender; or

25. **Landlord's Rights and Remedies**.

(a) Upon the occurrence of any one or more events as described in Section 24, Landlord may treat the same as a breach of this Lease and may, without further notice or demand of any kind to Tenant or any other person, and in addition to any and all other rights and remedies to which Landlord may be entitled at law or in equity, all of which rights and remedies shall be cumulative, terminate Tenant's right of possession of the Leased Premises, or at the option of Landlord (exercisable by written notice only), terminate this Lease and the Term created hereby, in either of which events Tenant shall forthwith deliver possession of the Leased Premises to Landlord.

(b) The service of demand for possession, a notice that the tenancy hereby created will be terminated on the date therein named, institution of an action of forcible detainer or ejectment or the entering of a judgment for possession in such action, or any other act or acts resulting in the termination of Tenant's right to possession of the Leased Premises shall not relieve Tenant from Tenant's obligation to pay the Rent and any other sums which may become due hereunder during the balance of the Term or any extension thereof, except as herein expressly provided. Landlord may collect and receive any Rent and other amounts due from Tenant, and the payment thereof shall not constitute a waiver of or affect any notice or demand given, suit instituted

-12-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000018 of 000052

000052

or judgment obtained by Landlord, or be held to waive, affect, change, modify or alter the rights or remedies which Landlord has in equity or at law or by virtue of this Lease.

(c) Tenant shall be obligated to make all Rent and other payments under this Lease without offset or deduction of any kind. Tenant agrees that Tenant's obligations under this Lease, including, without limitation, the payment of Rent, are independent covenants and are not conditioned on the covenants or warranties of Landlord. Tenant agrees that it shall not in any proceedings for Tenant's default brought by Landlord assert any counterclaim of any claim or nature other than a compulsory counterclaim pursuant to the _____ Rules of Civil Procedure; this shall not prohibit Tenant from asserting such claims in a separate action brought by Tenant.

(d) The rights and remedies given to Landlord in this Section 25 shall be in addition and supplemental to all other rights or remedies which Landlord may have at law and/or in equity. The acceptance of monetary or other damages by Landlord under any of the provisions of this Lease shall not preclude Landlord from the enforcement of any of the covenants or agreements of this Lease, nor shall any other act which infers recognition of the tenancy operate as a waiver of Landlord's right to terminate this Lease, or operate as an extension of this Lease. Tenant hereby acknowledges and agrees that, in the case of any provision herein related to liquidated damages, actual damages would be costly or inconvenient to determine.

(e) The waiver by Landlord of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or of any subsequent breach of the same or any other term, covenant or condition herein contained. The subsequent acceptance of Rent or any other sums hereunder by Landlord shall not be deemed to be a waiver of any preceding breach by Tenant of any term, covenant or condition of this Lease, or of any right of Landlord to a forfeiture of this Lease by reason of such breach, regardless of Landlord's knowledge of such preceding breach at the time of acceptance of such Rent or other sums. No term, covenant or condition of this Lease shall be deemed to have been waived by Landlord unless such waiver be in writing signed by Landlord.

**26.** **Defaults by Landlord.** In the event Landlord shall neglect or fail to perform or observe any of the covenants, provisions or conditions contained in this Lease on its part to be performed or observed for forty-five (45) days after written notice of default (or, if more than forty-five (45) days shall be required because of the nature of the default, if Landlord shall fail to commence such cure within said forty-five (45) day period and thereafter prosecute such cure to completion), then in that event Tenant may terminate this Lease and may recover for any and all actual damages sustained by Tenant as a result of Landlord's breach (but no consequential or punitive damages, the right to such damages being expressly waived by Tenant); provided, however, it is expressly understood and agreed that any money judgment resulting from any default or other claim arising under this Lease shall be satisfied only out of the rents, profits and other income (called "Income" for purposes of this Section 26 only) actually received by Landlord from it operations at the Main Yard, and no other real, personal or mixed property of Landlord or any of its partners, shareholders, owners, members, officers, directors or agents, wherever situated, shall be subject to levy on any such judgment, and that Landlord shall not have any personal liability whatsoever under this Lease, and that if the Income is insufficient for the payment of such judgment, Tenant will not institute any further action, suit, claim, or demand, in law or in equity, against Landlord or any of its partners, shareholders, owners, members, officers, directors or

-13-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000019 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

agents for or on the account of such deficiency. Tenant hereby waives any right to seek or recover consequential damages from Landlord, and further waives any right to recover any money judgment against Landlord except to the extent the same can be satisfied from the Income actually received by Landlord.

(a) Notwithstanding anything herein contained to the contrary, Tenant hereby waives, to the extent waivable under law, any right to specific performance or injunctive relief in the event of Landlord's default referred to herein, and Tenant expressly agrees that except as provided in the immediately following sentence, Tenant's remedy shall be limited to the monetary damages recoverable upon the terms and conditions set forth in this Section 26.

**27.** **Default Interest**. Any and all delinquent amounts shall accrue interest at the default rate of eighteen percent (18%) per annum ("Default Interest") from the date such payments became due until paid. Payment of Default Interest shall be a condition of any reinstatement or cure of any event of default hereunder.

**28.** **Mechanics' Liens**. Tenant agrees that it will pay or cause to be paid all costs for work done by it or caused to be done by it in the Leased Premises, and Tenant will keep the Leased Premises free and clear of all mechanics' liens and other liens on account of work done for or materials provided to Tenant or persons claiming under Tenant. Tenant agrees to and shall indemnify, defend and save Landlord free and harmless against any and all liability, loss, damage, costs, attorneys' fees and all other expenses on account of claims of lien of laborers or materialmen or others for work performed or materials or supplies furnished for Tenant or persons claiming under it. In addition, Tenant shall keep Tenant's leasehold interest and any of those improvements to the Leased Premises which are or become property of Landlord pursuant to this Lease free and clear of all liens of attachment or judgment liens. If any claim of lien is recorded, Tenant shall, within ten (10) days after notice thereof is given to Tenant by the claimant, Landlord or any other person, cause to be issued and filed in accordance with applicable law a bond of a responsible corporate surety in such amount and such form as may be required by law to release Landlord and the Leased Premises from said lien. If a final judgment establishing the validity or existence of a lien for any amount is entered, Tenant shall immediately pay and satisfy the same.

**29.** **Estoppel Certificates**. Tenant shall at any time and from time to time, upon not less than ten (10) business days written notice from Landlord, execute, acknowledge and deliver to Landlord and/or Landlord's designee a statement in writing (a) certifying that this Lease is unmodified and in full force and effect (or if modified, stating the nature of the modification) and the dates to which the Rent and other charges are paid in advance, (b) acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder or specifying such defaults if any exist, and (c) certifying to such other matters as may be reasonably requested by landlord or its designee.

**30.** **Transfer of Landlord's Interest**. Landlord shall have the absolute right at any time and from time to time to assign, convey or otherwise transfer its interest in the Leased Premises and this Lease, without consent of Tenant, and only the current owner of the Leased Premises shall be obligated to perform the covenants and obligations of the Landlord set forth in this Lease. Upon any sale, conveyance or other transfer of the Leased Premises by Landlord, the Buyer assumes all obligations of the lease and the transferor automatically shall be relieved of liability for any obligation or liability thereafter accruing.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000020 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

**31. Subordination and Attornment.** Landlord and Tenant agree that this Lease and all of Tenant's rights hereunder be and hereby are made subject and subordinate at all times to any and all mortgages in any amounts and all advances thereon which may now exist or hereafter be placed upon the real property leased hereunder and to any and all renewals, modifications, consolidations, participations, replacements and extensions thereof. The term "mortgage" as used herein shall be deemed to include a bond, mortgage, trust indenture, and deed of trust. The aforesaid provisions shall be self-operative and no further instrument of subordination shall be required to effectuate any such subordination. In the event Landlord or any Landlord, mortgagee, trustee, beneficiary or other party benefited by such subordination desires confirmation of such subordination, Tenant shall execute promptly and without charge therefor any certificate that may be requested. Such certificate shall also contain, at the election of Landlord or any Landlord, mortgagee, trustee, beneficiary or other party benefited by such subordination, an agreement whereby Tenant will attorn to said Landlord, mortgagee, trustee, beneficiary or other benefited party as Landlord in the event of a foreclosure or termination of such ground or underlying lease, or to any party taking title through said party in such event. Tenant hereby constitutes and appoints Landlord the Tenant's attorney-in-fact to execute any such certificates or documents for and on behalf of Tenant if Tenant shall fail to do so within ten (10) days after demand. The foregoing appointment of Landlord as Tenant's attorney-in-fact is coupled with an interest and is irrevocable.

**32. Signs.** Tenant shall have the right to install signs upon the Leased Premises only when first approved in writing by Landlord (which approval shall not be unreasonably withheld) and subject to any applicable governmental laws, ordinances, regulations and other requirements. Tenant shall remove all such signs at the termination of this Lease. Such installments and removals shall be made in such manner as to avoid injury or defacement of the Leased Premises.

**33. No Recording.** Neither this Lease nor any memorandum hereof shall be placed of record without the prior consent of Landlord, which consent may be granted or withheld in Landlord's sole discretion. Any such recordation by or on behalf of Tenant without the prior consent of Landlord shall be null and void, and shall constitute a breach under this Lease.

**34. Force Majeure.** Any prevention, delay or stoppage due to acts of God, inability to obtain labor or materials or reasonable substitutes therefor, governmental restrictions, governmental regulations, governmental controls, judicial orders, enemy or hostile governmental action, civil commotion, fire or other casualty, and other causes beyond the reasonable control of the party obligated to perform, shall excuse the performance by such party for a period equal to any such prevention, delay or stoppage.

**35. Attorneys' Fees.** In the event that at any time after the date hereof either Landlord or Tenant shall institute any action or proceeding against the other to enforce or interpret the provisions of this Lease (including without limitation unlawful detainer of the Leased Premises or for the recovery of any Rent or other sums due hereunder), then and in that event, the prevailing party in such action or proceeding shall be entitled to recover from the other party hereto the reasonable attorneys' fees and all costs and disbursements incurred therein For purposes of this Section 35, a prevailing party shall include, without limitation, a party who brings an action against the other party by reason of the other party's breach or default and obtains substantially the relief sought, whether by compromise, settlement or judgment.

-15-

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000021 of 000052

party shall include, without limitation, a party who brings an action against the other party by reason of the other party's breach or default and obtains substantially the relief sought, whether by compromise, settlement or judgment.

**36.** **Captions; Number and Gender**. The captions of the Sections of this Lease are for convenience only, are not a part of this Lease and do not in any way limit or amplify the terms and provisions of this Lease. If more than one (1) person or corporation is named as Landlord or Tenant in this Lease and executes the same as such, then and in such event, the words "Landlord" or "Tenant" wherever used in this Lease are intended to refer to all such persons or corporations, and the liability of such persons or corporations for compliance with and performance of all the terms, covenants and provisions of this Lease shall be joint and several. The neuter pronoun used herein shall include the feminine or the masculine as the case may be, and the use of the singular shall include the plural.

**37.** **Entire Agreement; Amendments**. It is understood that there are no oral or written agreements or representations between the parties hereto affecting this Lease, and this Lease and the attachments hereto supersede and cancel any and all negotiations, arrangements, representations, brochures, agreements and understandings, if any, between the parties hereto or displayed by Landlord to Tenant with respect to the subject matter thereof, and none thereof shall be used to interpret or construe this Lease. No amendment or modification of this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party hereto.

**38.** **Severability**. If any term or provision of this Lease shall to any extent be determined by a court of competent jurisdiction to be invalid or unenforceable, the remainder of the Lease shall not be affected thereby, and each term and provision of this Lease shall be valid and enforceable to the fullest extent permitted by law, and it is the intention of the parties hereto that any provision of this Lease is capable of two constructions, one of which would render the provision void, and the other of which would render the provision valid, then the provision shall have the meaning which renders it valid.

**39.** **Notices**. Wherever in this Lease it shall be required or permitted that notice or demand be given or served by either party to this Lease to or on the other, such notice or demand shall, except as otherwise provided herein, not be deemed to be given or served unless such notice is in writing and/or personally delivered, or forwarded by certified or registered mail, or sent for next-day delivery through a courier or delivery company providing nationwide service, addressed to the addressee at the address specified below. Either party may change such address by written notice by certified or registered mail to the other given at least ten (10) days prior to the effective date of the change.

If to Landlord:

 **500 Memorial Dr Kentucky LLC**
 **5014 16th Ave. Suite 9**
 **Brooklyn NY 11204**

If to Tenant:

 **Dry Care**

-16-

NOT ORIGINAL DOCUMENT 05/19/2023 03:55:45 PM 82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000022 of 000052

4601 13 Ave. *Changed*
Brooklyn NY 11219

**40.** **Holding Over**. In the event that Tenant shall, with or without Landlord's prior written consent, fail to surrender possession of the Leased Premises at the end of the Primary Term or Renewal Period, as applicable, such holding over shall be construed to be a tenancy from month to month, with one (1) month at the then existing Rental rate required to be paid by Tenant (giving Tenant one month to deconstruct the tank farm). After this one (1) month rate, a minimum rent of one hundred fifty percent (150%) of the Rental rate required to be paid by Tenant for the last Lease Year of the Term, and shall otherwise be on the terms and conditions herein specified so far as applicable (but in no event shall Tenant be entitled to exercise the Renewal Option during such holding over). Except to the extent that the provisions of this Lease or applicable otherwise provide for a shorter notice period, any holding over shall be terminable by either party hereto by not less than ten (10) days written notice.

**41.** **No Partnerships or Third Party Beneficiaries**. It is agreed that nothing contained in this Lease shall be deemed or construed as creating a partnership or joint venture between Landlord and Tenant or between Landlord and any other party, or cause Landlord to be responsible in any way for the debts or obligations of Tenant or any other party. The parties hereto do not intend to confer enforceable rights upon any person not a party hereto except as may be specifically provided herein.

**42.** **Authority**. Tenant and the parties executing this Lease on behalf of Tenant represent to Landlord that such parties are authorized to do so by requisite action of Tenant's board of directors, or partners, as the case may be, and agree, upon request, to deliver to Landlord a resolution or similar document to that effect.

**43.** **Successors and Assigns**. The parties hereto agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such covenants and agreements were used in each separate paragraph hereof, and that all of the provisions hereof shall bind and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors and assigns.

**44.** **Time of the Essence**. Time is of the essence with respect to the performance by Tenant of each and all of its obligations under this Lease.

**45.** **Governing Law**. THIS LEASE SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH, AND THE RIGHTS OF THE PARTIES SHALL BE GOVERNED BY, THE LAW OF THE STATE OF NYC WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICTS OF LAW.

**46.** **Arbitration**.

(a) The undersigned hereby agree that all controversies and claims (including the existence of an event of default) of any nature arising directly or indirectly out of this Lease shall, at the written request of any party, be submitted to binding arbitration pursuant to the applicable

-17-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000023 of 000052

rules of the American Arbitration Association. The arbitration shall proceed in NYC, shall be governed by NYC law and shall be conducted in accordance with the Commercial Arbitration Rule of AAA. Judgment upon any award rendered by the arbitrator(s) may be entered in any court having jurisdiction.

(b) A single arbitrator shall have the power to render a maximum award of **Seventy Five Thousand Dollars** ($75,000.00). When any party files a claim in excess of this amount, the arbitration decision shall be made by the majority vote of three arbitrators. No arbitrator shall have the power to restrain any act of any party.

(c) No provision of this Section shall limit the right of any party to exercise self-help remedies, to commence and prosecute eviction proceedings, or to obtain any provisional or ancillary remedies (including but not limited to injunctive relief or the appointment of a receiver) from a court of competent jurisdiction. The institution and maintenance of any remedy permitted under this Lease shall not constitute a waiver of the right to submit any controversy or claim to arbitration. The statute of limitations, estoppel, waiver, laches, and similar doctrines which would otherwise be applicable in an action brought by a party shall be applicable in any arbitration proceeding.

**47.** <u>Waiver of Right to Trial by Jury</u>. LANDLORD AND TENANT HEREBY WAIVE THEIR RESPECTIVE RIGHT TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION, PROCEEDING OR HEARING BROUGHT BY EITHER LANDLORD AGAINST TENANT OR TENANT AGAINST LANDLORD ON ANY MATTER WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE LEASED PREMISES, OR ANY CLAIM OF INJURY OR DAMAGE, OR THE ENFORCEMENT OF ANY REMEDY UNDER ANY LAW, STATUTE OR REGULATION, EMERGENCY OR OTHERWISE, NOW OR HEREAFTER IN EFFECT.

IN WITNESS WHEREOF, the parties hereto have executed this Lease on the date and year first above written.

LANDLORD:

**500 Memorial Dr Kentucky LLC**

By: _____
Title: _____

TENANT:

**Dry Care**

By: _____

-18-

Filed     23-CI-00122     03/08/2023     Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT 05/19/2023 03:55:45 PM 82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000024 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Title: _Max Shor CEO_____

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000025 of 000052

-19-

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

# EXHIBIT A

### DESCRIPTION AND DEPICTION
### OF LEASED PREMISES AND MAIN YARD

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000026 of 000052

NOT ORIGINAL DOCUMENT

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35



Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000028 of 000052

NOT ORIGINAL DOCUMENT 05/19/2023 03:55:45 PM 82451-35

| Primary Term | Annual Rental | Monthly Installments | PPSF |
|---|---|---|---|
| 2021 | $ 255,756.00 | $ 21,313.00 | $ 2.32 |
| 2022 | $ 255,756.00 | $ 21,313.00 | $ 3.40 |
| 2023 | $ 255,756.00 | $ 21,313.00 | $ 3.40 |
| 2024 | $ 255,756.00 | $ 21,313.00 | $ 3.40 |
| 2025 | $ 268,543.80 | $ 22,378.65 | $ 3.57 |
| 2026 | $ 268,543.80 | $ 22,378.65 | $ 3.57 |
| 2027 | $ 268,543.80 | $ 22,378.65 | $ 3.57 |
| 2028 | $ 268,543.80 | $ 22,378.65 | $ 3.57 |
| 2029 | $ 281,970.99 | $ 23,497.58 | $ 3.75 |
| 2030 | $ 281,970.99 | $ 23,497.58 | $ 3.75 |
| 2031 | $ 281,970.99 | $ 23,497.58 | $ 3.75 |
| 2032 | $ 281,970.99 | $ 23,497.58 | $ 3.75 |
| 2033 | $ 296,069.54 | $ 24,672.46 | $ 3.94 |
| 2034 | $ 296,069.54 | $ 24,672.46 | $ 3.94 |
| 2035 | $ 296,069.54 | $ 24,672.46 | $ 3.94 |
| 2036 | $ 296,069.54 | $ 24,672.46 | $ 3.94 |
| **Renewal Periods** | | | |
| **First Renewal Period** | | | |
| 2037 | $ 325,676.49 | $ 27,139.71 | $ 4.33 |
| 2038 | $ 332,190.02 | $ 27,682.50 | $ 4.42 |
| 2039 | $ 338,833.82 | $ 28,236.15 | $ 4.50 |
| 2040 | $ 345,610.50 | $ 28,800.88 | $ 4.59 |
| 2041 | $ 352,522.71 | $ 29,376.89 | $ 4.69 |
| **Second Renewal Period** | | | |
| 2042 | $ 387,774.98 | $ 32,314.58 | $ 5.15 |
| 2043 | $ 395,530.48 | $ 32,960.87 | $ 5.26 |
| 2044 | $ 403,441.09 | $ 33,620.09 | $ 5.36 |
| 2045 | $ 411,509.91 | $ 34,292.49 | $ 5.47 |
| 2046 | $ 419,740.11 | $ 34,978.34 | $ 5.58 |
| **Third Renewal Period** | | | |
| 2047 | $ 461,714.12 | $ 38,476.18 | $ 6.14 |
| 2048 | $ 470,948.40 | $ 39,245.70 | $ 6.26 |
| 2049 | $ 480,367.37 | $ 40,030.61 | $ 6.38 |
| 2050 | $ 489,974.72 | $ 40,831.23 | $ 6.51 |
| 2051 | $ 499,774.21 | $ 41,647.85 | $ 6.64 |

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000029 of 000052



NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
8151-35

### Tom W. Miller

| | |
|---|---|
| **From:** | Bernie Shafran <bshafran@fhsllp.com> |
| **Sent:** | Wednesday, March 16, 2022 3:52 PM |
| **To:** | Tom W. Miller |
| **Subject:** | FW: Document from J |
| **Attachments:** | dry_care_lease-1.pdf |

*Bernard A. Shafran, Esq.*

Frenkel, Hershkowitz & Shafran LLP
49 West 37th Street
Ninth Floor
New York, NY 10018-6527

Tel.:    212-679-4666
Direct:  212-481-6980
bernie@fhsllp.com

**From:** Yoel Israel <yoel@bhyequities.com>
**Sent:** Wednesday, March 16, 2022 3:44 PM
**To:** Bernie Shafran <bshafran@fhsllp.com>
**Subject:** Document from J

dry_care_lease-1.pdf



EXHIBIT

*C*

1

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000030 of 000052

MEMORIAL  000785

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

## OWNER'S AFFIDAVIT AND GAP UNDERTAKING

BEFORE ME, the undersigned authority, personally appeared a *Zulman Shablo* of 500 Memorial Dr Kentucky LLC, a Delaware limited liability company, ("Owner"), who first being duly sworn, deposes and says:

1.    Affiant is the *member* of Owner, and Affiant is duly authorized to make this Affidavit on behalf of Owner.

2.    Owner is the owner of that certain real property described on Exhibit "A" attached hereto ("the Property").

3.    Owner is entitled to possession of the Property, and there is no other person or entity in possession who has any right in the Property except for Dry Care pursuant to a Lease dated February 17, 2022 ("the Lease"). The Lease is in full force and effect, has not been amended, modified or supplemented, and as of this date, no breach exists on the part of the Owner under the Lease and to Owner's knowledge, no breach exists on the part of Dry Care under the Lease.

4.    All real estate taxes, special assessments, water and sewer charges and management fees, if any, in connection with the Property are fully paid.

5.    There are no known unrecorded labor, mechanics' or materialmen's liens against the Property, and no material has been furnished to or labor performed upon the Property except such that have been paid for in full.

6.    There are no known unrecorded options or contracts to purchase, contracts for deed or mortgage commitments, or unrecorded deeds, easements or rights of way for users or adverse interests with respect to the Property.

7.    There is no known outstanding contract of sale, conveyance, claim, mortgage, lien, or encumbrance affecting the Property that is not being satisfied or released contemporaneously with delivery of the Deed.

8.    There are no known unrecorded existing tenancies, leases or other occupancies affecting the Property.

9.    There is no action or proceeding, including but not limited to bankruptcy, which is now pending against Owner in any state or Federal court, nor is there any attachment, judgment or other encumbrance which may now constitute a lien upon the Property, nor are there any claims or pending claims against Owner which may be satisfied through a lien or attachment against the Property.

10.    Affiant and Owner have received no written notice (except as may have been disclosed in the public records of the applicable jurisdiction) of an officially proposed or pending special assessment or a pending taking of any portion of the Property by any governmental body, and to the undersigned's

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000031 of 000052



**EXHIBIT D**

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

MEMORIAL 000786

knowledge, there has been no work done on the Property, nor notice received that work is to be done on the Property by the municipality (state, county, city, borough or township), or at its direction, including but not limited to the installation of water or sewer lines or of other utilities, or for improvements such as paving or repaving of streets or alleys, or the installation of curbs and sidewalks.

11.     Owner has received any and all company resolutions necessary to authorize a conveyance of the Property and should Commonwealth Land Title Insurance Company request a copy of the resolutions, Owner shall furnish copies within a reasonable period of time.

THIS AFFIDAVIT, is made for the purpose of inducing COMMONWEALTH LAND TITLE INSURANCE COMPANY to issue a title insurance policy or other title insurance evidence and inducing 500 Memorial Drive, LLC, a Kentucky limited liability company, to purchase the Property. Affiant hereby indemnifies and agrees to save harmless COMMONWEALTH LAND TITLE INSURANCE COMPANY and 500 Memorial Drive, LLC against any damages, or expenses, including attorney fees, sustained as a result of any of the foregoing matters not being true and accurate and further indemnifies COMMONWEALTH LAND TITLE INSURANCE COMPANY as to defects, liens, encumbrances, adverse claims or other matters, if any, created first appearing on the public records or attaching subsequent to May 17, 2022.

Dated as of this __2__ day of _June_, 2022.

500 MEMORIAL DR KENTUCKY LLC

By: _____

Its: _Zalmun Skablo member_

STATE OF NEW YORK

COUNTY OF _kings_

Subscribed, sworn to and acknowledged before me by _Zalmen Skoblo_ as _Member_ of 500 Memorial Dr Kentucky LLC, a Delaware limited liability company, on behalf of said limited liability company, on this _2_ day of _June_, 2022.

My commission expires: _April 9 2024_ # _____

_____
NOTARY PUBLIC

MIREL HACKNER
Notary Public, State of New York
No. 01HA6259118
Qualified in Kings County
Commission Expires April 9, 2024

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000032 of 000052

MEMORIAL 000787

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

## EXHIBIT "A"

BEING all of Lot No. 3, Parcel C, and Parcel J of the Industrial Land of Jessamine Creek Farms, Inc., and Erwin C. and Josephine Ches and Tranzonic Companies Properties, a second amended record plat of which is of record in Plat Cabinet 5, Slide 58, in the Jessamine County Clerk's Office and to which plat reference is hereby made for a more particular description thereto.

AND

All that tract or parcel of land lying South of Etter Drive in Nicholasville, Kentucky being more particularly described as Parcel 2-C containing 1.049 acres on that plat of record in Plat Cabinet 5, at Slide 132, in the Jessamine County Clerk's Office entitled "Retracement and Consolidation Plat of Jessamine Creek Farm, Inc. Property, Deed Book 116, Page 280". For a more particular description of said tracts, reference is hereby made to said Plat.

AND

BEING all of Tract 2 and Tract 2-A as shown on the Plat entitled Plat of Correction of Industrial Land of Jessamine Creek Farms, Inc., as shown by the plat of record in Plat Cabinet 1, Slide 104, in the Jessamine County Clerk's Office. Also see Plat recorded in Plat Cabinet 5, Slide 58, in the aforesaid Clerk's Office.

Also:

BEING all of Parcel 1-A as shown on Retracement and Consolidation Plat of Jessamine Creek Farm, Inc. of record in Plat Cabinet 5, Slide 132, in the Jessamine County Clerk's Office.

The above tracts being also shown on Consolidation Plat of Tranzonic Companies Property of record in Plat Cabinet 10, Slide 70, in the Jessamine County Clerk's Office.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000033 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL BRANCH
ACTION NO. 22-CI-00395

500 MEMORIAL DRIVE, LLC                                 PLANTIFF

VS.     **DEFENDANT'S AFFIDAVIT IN OPPOSITION TO PLAINTIFF'S MOTION FOR RESTRAINING ORDER AND/OR TEMPORARY INJUNCTION**

DRY CARE, LLC                                        DEFENDANT

\*\*\*\*\*

Comes Max Shor, who, after first being duly sworn, and in support Defendant's response to Plaintiff's motions filed herein states as follows:

1. That I am the owner/member/manager of the Defendant, Dry Care, LLC, a New York Limited Liability company, duly registered and in good standing with the Kentucky Secretary of State and authorized to do business in the Commonwealth of Kentucky.

2. That I began leasing the property which is the subject matter of this litigation in 2019 and started operating my business out of this location and have continued to do so since that time.

3. That in February 2022, I was contacted by Zalman Skoblo and Yoel Israel, the owners of 500 Memorial Drive, LLC, wanting to re-negotiate my existing lease on the subject property as that was an integral part of their decision on whether to buy the property to which request, I agreed.



EXHIBIT
E

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000034 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

4. That on or about February 17, 2022, I was provided a draft of a new lease from Mr. Skablo to review. I advised Mr. Skoblo and Mr. Israel that I was in basic agreement with the new lease provided that certain changes would need to be made including, but not limited to the rent schedules to which they agreed. I tentatively signed and returned the February 17, 2022, lease to them with the understanding that my signature was subject to the revised terms to which we had agreed upon. They agreed to make the changes to the lease since they had prepared the original and to sign and return the revised copy, which is verified by the fact that they never signed the February 17th version of the lease.

5. That it is my understanding the Skoblo and Israel completed their purchase of the property the following day on February 18, 2022.

6. That on February 21, 2022, I was provided the signed revised lease and signed same and returned it to the new owners of the subject property.

7. That prior to his purchase of the property I met with Mr. Worley in Nicholasville, Ky on or about March 30, 2022, as he wanted to discuss some possible amendments to the lease. At that time, he showed me a copy of the February 17th lease and I advised him that was not the final lease, just a preliminary draft and that the final operative lease was the one dated February 21ᐧ 2022. I also took a screen shot of that lease (since I no longer had a copy of it) and sent it to Mr. Israel who also called and advised Mr. Worley that was not the operative lease. (see Israel affidavit attached hereto). That was the last communication I personally had with Mr. Worley prior to his purchase of the property

8. That shortly after his purchase of the property, on our about June 3, 2022, I was again contacted by Mr. Worley about some possible amendments to my lease, and although those discussions started amicably, Mr. Worley soon became angry and rude with me because I would

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000035 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

not agree to all his requested changes and therefore, I ceased any further communications with him.

9.  That I have reviewed the Owner's Affidavit and Gap Undertaking signed by Mr. Skoblo at closing, and upon information and belief, it is my understanding that document was prepared by Mr. Worley's attorneys and sent to Mr. Skoblo along with numerous other closing documents for signature, which Mr. Skablo signed without a close review and not catching the fact that the date of the operative lease said February 17, 2022 rather than the correct date of February 21, 2022. (see Skoblo affidavit attached hereto).

10.  That I have reviewed the allegations in the pleadings regarding safety and other issues existing on the property and this is the first I have ever heard about them.  Mr. Worley has never contacted me about these issues.  Had he done so, I would certainly have given them my immediate attention to the extent required and will certainly do so at this point in time.

11.  That I am currently operating a major production facility on the leased premises and have invested over a million dollars in the operation and if my lease were to be arbitrarily terminated due to my existing contracts and obligations which I could not fulfill, my damages would easily be in the millions of dollars.

Further the affiant sayeth naught.

MAX SHOR

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000036 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

STATE Of KENTUCKY

COUNTY OF FAYETTE

The foregoing instrument was subscribed, sworn, and acknowledged before me this 10TH day of August 2022, by Max Shor, as Member/Manager of Dry Care, LLC, on behalf of said company.

My Commission Expires: _____

David A. Franklin
Notary Public, ID No. 604576
State at Large, Kentucky
My Commission Expires on Sept. 5, 2022

Notary ID Number: _____

_____
NOTARY PUBLIC, KENTUCKY STATE-AT-LARGE

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000037 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

## AFFIDAVIT

STATE OF NEW YORK      )

                                          )ss:

COUNTY OF NEW YORK   )

Zalman Skoblo, being duly sworn, deposes and says:

1.      I am the erstwhile owner of 500 Memorial Drive, Nicholasville, KY and I make this affidavit to address issues regarding the lease at the subject premises.

2.      The lessee at the premises Dry Care, LLC entered into a lease with my company as owner of the Premises on February 21, 2022.

3.      A previous document executed by me inadvertently referred to the date of the aforementioned lease as February 17, 2022.

4.      This was a typographical error, the date is actually February 21, 2022.

5.      I remain available to address any additional questions you may have.

Zalman Skoblo

Sworn to this
12 day of August, 2022

Notary Public

MIREL HACKNER
Notary Public, State of New York
No. 01HA6259118
Qualified In Kings County
Commission Expires April 9, 2024



EXHIBIT
F

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000038 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

THIS DEED, made and entered into as of the __7ᵀᴴ__ day of June, 2022, by and between 500 MEMORIAL DR KENTUCKY LLC, a Delaware limited liability company, 5014 16ᵗʰ Avenue, Brooklyn, New York 11204, First Party, and 500 MEMORIAL DRIVE, LLC, a Kentucky limited liability company, 9 Avenue of Champions, Nicholasville, Kentucky 40356, Second Party;

## WITNESSETH:

THAT for and in consideration of the sum of Four Million Dollars ($4,000,000.00), the full sale price, the receipt of all of which is hereby acknowledged; First Party has BARGAINED and SOLD and does hereby GRANT and CONVEY unto Second Party, its successors and assigns forever, the following-described property located in Jessamine County, Kentucky, to-wit:

BEING all of Lot No. 3, Parcel C, and Parcel J of the Industrial Land of Jessamine Creek Farms, Inc., and Erwin C. and Josephine Ches and Tranzonic Companies Properties, a second amended record plat of which is of record in Plat Cabinet 5, Slide 58, in the Jessamine County Clerk's Office and to which plat reference is hereby made for a more particular description thereto.

AND

All that tract or parcel of land lying South of Etter Drive in Nicholasville, Kentucky being more particularly described as Parcel 2-C containing 1.049 acres on that plat of record in Plat Cabinet 5, at Slide 132, in the Jessamine County Clerk's Office entitled "Retracement and Consolidation



Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000039 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Plat of Jessamine Creek Farm, Inc. Property, Deed Book 116, Page 280". For a more particular description of said tracts, reference is hereby made to said Plat.

AND

BEING all of Tract 2 and Tract 2-A as shown on the Plat entitled Plat of Correction of Industrial Land of Jessamine Creek Farms, Inc., as shown by the plat of record in Plat Cabinet 1, Slide 104, in the Jessamine County Clerk's Office. Also see Plat recorded in Plat Cabinet 5, Slide 58, in the aforesaid Clerk's Office.

Also:

BEING all of Parcel 1-A as shown on Retracement and Consolidation Plat of Jessamine Creek Farm, Inc. of record in Plat Cabinet 5, Slide 132, in the Jessamine County Clerk's Office.

The above tracts being also shown on Consolidation Plat of Tranzonic Companies Property of record in Plat Cabinet 10, Slide 70, in the Jessamine County Clerk's Office..

Being the same property conveyed to 500 Memorial Dr Kentucky LLC, a Delaware limited liability company, by Deed dated February 18, 2022, and of record in Deed Book 845, Page 826, in the Jessamine County Clerk's Office.

TO HAVE AND TO HOLD the above-described property together with all appurtenances and privileges thereunto belonging unto Second Party, its successors and assigns forever.

First Party does hereby release and relinquish unto Second Party, its successors and assigns, all of First Party's right, title and interest in and to said property, including all exemptions allowed by law, and First Party does hereby covenant to and with Second Party, its successors and assigns, that First Party is lawfully seized of a good, fee simple title to said property with good and lawful right to sell and convey the same as herein done, that said property is free and clear of all encumbrances of whatsoever

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000040 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

nature, except as provided for herein, and with said exceptions, First Party will WARRANT GENERALLY the title thereto.

Provided, however, this conveyance is made subject to all easements, restrictions and conditions of whatsoever nature which June appear of record affecting said property.

The parties hereto certify and state that the consideration reflected in this instrument is the full consideration paid for the subject property. Second Party joins this Deed for the sole purpose of certifying the consideration pursuant to KRS 382.135. The in-care-of address to which the property tax bill for the year in which the subject property is transferred June be sent is the address of Second Party set out above.

IN WITNESS WHEREOF, the parties have hereunto set their hands this the day and year first above written.

500 MEMORIAL DR KENTUCKY LLC

By:_____

Its: _Zalman Skoblo member_

STATE OF NEW YORK

COUNTY OF __Kings__

Subscribed, sworn to and acknowledged before me by _Zalman Skoblo_ as _member_ of 500 Memorial Dr Kentucky LLC, a Delaware limited liability company, on behalf of said limited liability company, on this 2nd day of June, 2022.

My commission expires: _____    I.D.#_____

GEDALIA MARYL
Notary Public, State of New York
Reg. No. 01MA6226310
Qualified in Kings County
Commission Expires August 09 2022

JESSAMINE COUNTY
D845   PG847

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000041 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

NOTARY PUBLIC,
KENTUCKY, STATE AT LARGE

500 MEMORIAL DRIVE, LLC

By: _____ Manager
Rodney Worley, Manager

STATE OF KENTUCKY

COUNTY OF FAYETTE

Subscribed, sworn to and acknowledged before me by Rodney Worley as Manager of 500 Memorial Drive, LLC, a Kentucky limited liability company, on behalf of said limited liability company, on this 7th day of June, 2022.

My commission expires: _12-23-24_    I.D.# KYNP 18842

_Thomas C Marks_
NOTARY PUBLIC,
KENTUCKY, STATE AT LARGE

Mail To:

Prepared by:

MILLER, GRIFFIN & MARKS, P.S.C.
271 West Short Street, Suite 600
Lexington, Kentucky 40507
Telephone: (859) 255-6676

By: _Thomas C Marks_
Thomas C. Marks

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000042 of 000052

DOCUMENT NO: 417815
RECORDED:June 07,2022  10:37:00 AM
TOTAL FEES:$50.00 TRANSFER TAX:$4,000.00
COUNTY CLERK: JOHNNY M. COLLIER, CJC
DEPUTY CLERK: KATHERINE CARTER
COUNTY: JESSAMINE COUNTY
BOOK: D845    PAGES: 845 - 848

JESSAMINE COUNTY
D845    PG848

THIS ASSIGNMENT OF LEASE (the "Assignment") is made and entered into as of the ⟶ day of June, 2022, by and between **500 MEMORIAL DR KENTUCKY, LLC,** a Delaware limited liability company ("Assignor") and **500 MEMORIAL DRIVE, LLC,** a Kentucky limited liability company ("Assignee").

## RECITALS

A.     Assignor as landlord and Dry Care as tenant entered into a Lease dated February 17, 2022 ("the Lease") relating to the lease of certain property known as Buildings 1 and 3 and 35,000 square feet of Building 2 (collectively "the Leased Premises") located at 500 Memorial Drive, Nicholasville, Kentucky 40356 ("the Real Property").

B.     By Deed of even date herewith, Assignor has conveyed the Real Property to Assignee.

C.     Assignor now desires to transfer and assign all of Assignor's right, title and interest in and to the Lease to Assignee.

**NOW, THEREFORE,** in consideration of the foregoing premises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the mutuality, receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

Assignor does hereby sell, transfer, assign, set over and deliver, absolutely and forever, unto Assignee, all of Assignor's right, title and interest in and to the Lease.

Assignee joins in this instrument for the purpose of accepting this Assignment and assuming the future obligations of Lessor under the Lease. Assignor does hereby agree to indemnify and hold harmless Assignee from and against all loss, liability, damage, claims, actions, demands, costs and expenses (including court costs and attorneys' fees) in connection with the Lease for any matter arising prior to or as of the date hereof. Assignee does hereby agree to indemnify and hold harmless Assignor from and against all loss, liability, damage, claims, actions, demands, costs and expenses (including court costs and attorneys' fees) in connection with the Lease for any matter arising after the date hereof.

This Assignment is executed and delivered in, and shall be governed, enforced and interpreted in accordance with the laws of the Commonwealth of Kentucky.

This Assignment supersedes all agreements previously made between the parties relating to its subject matter. No changes, additions, or modifications may be made to this Assignment unless in writing and signed by both parties.

If any provision of this Assignment or any application thereof shall be invalid or unenforceable, the remainder of this Assignment and any other application of such provision shall not be affected thereby.

NOT ORIGINAL DOCUMENT 05/19/2023 03:55:45 PM 82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000043 of 000052



1     EXHIBIT
**H**

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

**IN WITNESS WHEREOF**, witness the signatures of the Assignor and the Assignee, as of the day, month and year first above written.

500 MEMORIAL DR KENTUCKY, LLC

BY: _____

TITLE: _____

500 MEMORIAL DRIVE, LLC

BY: _____

TITLE: _____MANAGER_____

STATE OF New York )
                  )
COUNTY OF Kings )

The foregoing instrument was subscribed, sworn to, and acknowledged before me by Zalmen Shublo, as ____Member____ of 500 Memorial Dr Kentucky, LLC, a Delaware limited liability company, on behalf of said limited liability company, on this the __2__ day of __June__, 2022.

My commission expires: __April 9 2024__   Notary ID: __01HA6259118__

MIREL HACKNER
Notary Public, State of New York
No. 01HA6259118
Qualified in Kings County
Commission Expires April 9, 2024

NOTARY PUBLIC,
STATE AT LARGE, KY  New York

STATE OF KENTUCKY )
                  )
COUNTY OF FAYETTE )

The foregoing instrument was subscribed, sworn to, and acknowledged before me by Rodney Worley, as ____MANAGER____ of 500 Memorial Drive, LLC, a Kentucky limited liability company, on behalf of said limited liability company, on this the 7th day of __June__, 2022.

My commission expires: __12-23-24__   Notary ID: __KYNP18842__

_____
NOTARY PUBLIC,
STATE AT LARGE, KY

2

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000044 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

This instrument was prepared by:

**MILLER, GRIFFIN & MARKS, P.S.C.**
600 Security Trust Building
271 West Short Street
Lexington, Kentucky 40507-1292
E-mail: tcm@kentuckylaw.com
Telephone: (859) 255-6676
Facsimile: (859) 259-1562

By: _Thomas C. Marks_
    **Thomas C. Marks**

F:\Share\TCM\AGRMTS\500 Memorial - 500 Memorial - Assignment of Lease.docx

3

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

EXH : 000045 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Tendered    22-CI-00395    01/16/2023    Doug Fain, Jessamine Circuit Clerk

COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL BRANCH
ACTION NO. 22-C1-00395

500 MEMORIAL DRIVE, LLC                                                    PLANTIFF

VS.        **FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND JUDGMENT**

DRY CARE, LLC                                                              DEFENDANT

**\*\*\*\*\*\*\*\*\*\***

This matter having come before the Court for a hearing on January 9, 2023; the Court having held an earlier hearing involving these parties on August 18, 2022 and having considered the testimony and exhibits introduced at both hearings; the Court having held a subsequent hearing on January 11, 2023 for the purpose of allowing the Defendant to provide evidence a written Lease is in effect and binding on the Plaintiff; and the Court having reviewed exhibits that were introduced and hearing arguments from counsel; the Court does hereby make the following Findings of Fact and Conclusions of Law and Judgment.

**FINDINGS OF FACT**

1.      500 Memorial Drive, LLC ("Memorial") purchased the real property at 500 Memorial Drive, Nicholasville, Jessamine County, Kentucky ("Property") on June 7, 2022.

2.      Dry Care, LLC ("Dry Care") has occupied Buildings 1, 3 and 35,000 square feet of Building 2 (a total of 112,740 square feet) continuously since Memorial purchased the Property.

3.      Dry Care entered into a Lease dated June 19, 2019 with a prior owner of the Property, which was introduced into evidence ("Albaad Lease"). That Lease expired in June, 2022.



EXHIBIT
I

1

Tendered    22-CI-00395    01/16/2023    Doug Fain, Jessamine Circuit Clerk

TD : 000001 of 000007
EXH : 000046 of 000052
Presiding Judge: HON. HUNTER DAUGHERTY (613171)

Tendered        22-CI-00395    01/16/2023        Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

4.      The Court was provided two (2) written Leases of the Property between 500 Memorial Drive Kentucky, LLC ("Memorial Kentucky 1") and Dry Care, one dated February 17, 2022 (the "February 17 Lease") and the other dated February 21, 2022 (the "February 21 Lease").

5.      The February 17 Lease is not signed by Memorial Kentucky 1. Shor, the principal owner of Dry Care, testified that the February 17 Lease was never intended to be binding on the parties, but was needed by Memorial Kentucky 1 prior to its closing of its purchase of the Property on or about February 18, 2022 and Memorial Kentucky 1 agreed to revise the Lease.

6.      Rodney Worley ("Worley"), the principal owner of Memorial, testified that prior to Memorial's purchase of the Property, the Seller represented to him that the February 17 Lease was in full force and effect. That representation is supported by an email dated March 16, 2022 from attorney Bernard Shafran, who was representing the Seller; in the Contract of Sale dated March 25, 2022; and in the Seller's Affidavit, dated June 2, 2022.

7.      Shor testified that the February 21 Lease was executed by him and Memorial Kentucky 1 and that it should be binding on Memorial. Shor gave inconsistent testimony as to the date it was signed and by whom for Memorial Kentucky 1.

8.      Shor and Worley both testified that the only time they met in person prior to June 7, 2022 was on March 30, 2022. They met at the Property along with Yoel Israel ("Israel") (also referred to by Shor as "Jay") and Scott Smith ("Smith"). Worley testified that he had with him, and shared with Shor, the February 17 Lease. Shor testified he believed they were discussing the February 21 Lease.

9.      Israel has an audio recording lasting approximately 1 hour and 20 minutes made during the meeting on March 30, 2022. Shor tendered to the Court 6 short snippets from the

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

2

TD : 000002 of 000007    EXH : 000047 of 000052

Tendered        22-CI-00395    01/16/2023        Doug Fain, Jessamine Circuit Clerk

Filed        23-CI-00122    03/08/2023        Doug Fain, Jessamine Circuit Clerk

Tendered 22-CI-00395 01/16/2023 Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

recording. Having listened to the audio recordings, the Court does not believe they establish that Worley had seen, or agreed to, the terms of, the February 21 Lease prior to June 7, 2022.

10. The Court doubts the February 21 Lease was prepared and executed prior to June 7, 2022.

11. Worley testified that he first saw the February 21 Lease after Memorial had purchased the Property. That testimony is unrefuted and in fact is supported by an email from Dry Care's attorney attaching the February 21 Lease. That email was sent on June 20, 2022 by Bruce Goldstein.

12. Memorial has introduced into evidence a comparison between the two Leases and the Court agrees with Worley that they are materially different.

13. Worley testified that even before Memorial purchased the Property, he and Shor, and a representative of Memorial Kentucky 1, Jay, were negotiating the terms of a new Lease. Worley testified that during those negotiations, he was told by Shor that Dry Care only had an oral Lease.

14. The Court has reviewed exchanges of texts and emails among Worley, Shor and Israel from April 6 through June 3, 2022 regarding a new Lease. The written communications reviewed by the Court confirm that Shor did not believe there was any written Lease in effect at the time Memorial purchased the Property.

15. The Court has reviewed exchanges of text messages between Worley and Shor that extend from April 6, 2022 through July 5, 2022 and has heard testimony regarding those exchanges from both Worley and Shor. Specifically, on May 18, 2022, while the parties were negotiating the terms of a new Lease, Shor stated:

Tendered 22-CI-00395 01/16/2023 Doug Fain, Jessamine Circuit Clerk

Filed 23-CI-00122 03/08/2023 Doug Fain, Jessamine Circuit Clerk

CJ 000003 of 000007

EXH : 000048 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

...I'm just not the negotiating type of guy, I told Jay to take over he told me he's going to be on top of it and make sure I have a lease before you purchase the building....

16.     The Court has reviewed email exchanges between Shor and Worley (referred to in Paragraph 14 above). It appears to the Court that the email dated May 24, 2022 from Israel ("A deal is better than no deal") and the exchanges on June 3, 2022 confirm there was no Lease in place between Dry Care and Memorial effective those dates.

17.     In addition, on May 13, 2022, counsel for Memorial wrote to Ayala Rosenfeld ("Rosenfeld") at Dry Care. The letter states in part "We understand you take the position that there is no written lease binding the current (or any future) owner of the building". No response was sent to Worley disputing Mr. Miller's assertion in the letter.

18.     On June 7, 2022, Miller wrote a letter to Rosenfeld stating there was no lease in place and directing Dry Care to vacate. There was no response sent to that letter.

19.     On June 14, 2022, Miller wrote a letter to Bruce Goldstein, counsel to Dry Care, providing a copy of the Deed confirming Memorial is now the owner of the Property. In that letter, Miller inquired whether there was a written lease and asked that it be provided to him. The letters sent by counsel Miller confirm that Memorial was unaware of the February 21 Lease until Goldstein sent it to Miller.

20.     Considering the testimony of the parties and the exhibits Memorial introduced and specifically the above-referenced text exchanges, emails and letters, and Shor having failed to provide either a written exchange or a recorded conversation proving otherwise, the Court finds Dry Care has no Lease to the Property that is binding upon Memorial.

21.     The Court finds that Dry Care had no written Lease.

4

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

ID : 000004 of 000007
EXH : 000049 of 000052

Tendered 22-CI-00395 01/16/2023 Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT 05/19/2023 03:55:45 PM 82451-35

22. Clark Toleman ("Toleman") is a highly qualified real estate appraiser. The Court heard his testimony and viewed his qualifications and concludes that his testimony as to the fair rental value of the Property of $3.00 per square foot plus a proportionate portion of the expenses for insurance, real estate taxes and maintenance is credible. The Court adopts that testimony as part of these findings.

23. Per the testimony of Toleman, the square footage in the Property occupied by Dry Care is 112,740 square feet. At $3.00 per square foot, this is an annual fair rental value of $338,220 or $28,185 per month, plus the proportionate share of the expenses for the Property.

24. Worley has provided evidence of the annual expenses for real estate tax, insurance and maintenance of the Property and calculated the annual expenditure obligation of Dry Care is $68,629.44 or $5,719.12 per month. Worley has further testified that a combination of the rent and expense sharing for Dry Care is $33,904.12 per month.

25. Dry Care has occupied the Property for eight (8) months subsequent to Memorial's purchase of it during which it has paid $14,546.42 per month or a total of $116,371.36.

26. Memorial claims the current amount due from Dry Care for the 8 months of its occupancy is $271,232.96 and after giving credit for the $116,371.36 paid, Memorial has requested Judgment of $154,861.60.

27. Memorial's attorney's fees and costs incurred in the dispute with Dry Care through January 5, 2022 is $27,953.50.

28. Worley testified Memorial has spent about $134,000 repairing and improving the Property. His testimony is unrefuted.

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

TD : 000005 of 000007

EXH : 000050 of 000052

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

Tendered 22-CI-00395 01/16/2023 Doug Fain, Jessamine Circuit Clerk

## CONCLUSIONS OF LAW

Considering the testimony and exhibits presented to the Court during the 3 days of hearings and the Findings of Fact set forth above, the Court makes the following Conclusions of Law:

1. Dry Care has no Lease permitting it to occupy the Property.

2. Dry Care has no right to continue to occupy the Property.

3. Dry Care underpaid its monthly obligation to be permitted to occupy the Property for eight (8) months.

## JUDGMENT

The Court makes the following Order and Judgment:

1. Dry Care shall vacate the Property no later than March 11, 2023.

2. For the period of time Dry Care occupies the Property after January 31, 2023, it shall pay to Memorial $33,904.12 on the first day of each month.

3. Dry Care shall pay to Memorial $154,861.60 representing the underpayment of the fair market rent and expense sharing for eight (8) months. The Order entered on August 30, 2022 does not limit the damages to which Memorial is entitled.

4. For the period of time Dry Care remains in the Property, it must maintain it in a safe condition and will be responsible for any new damage to it after January 11, 2023.

5. Dry Care shall pay Memorial's court costs.

6. Interest will accrue at the rate of 6% per annum on the Judgment amount.

7. There being no just cause for delay in its enforcement, this is a final and appealable order.

Dated this the __13__ day of January, 2023.

_____
JUDGE, JESSAMINE CIRCUIT COURT

6

Tendered 22-CI-00395 01/16/2023 Doug Fain, Jessamine Circuit Clerk

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

TD : 000006 of 000007

EXH : 000051 of 000052

Tendered    22-CI-00395    01/16/2023    Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT
05/19/2023 03:55:45 PM
82451-35

## CLERK'S CERTIFICATE OF SERVICE

I hereby certify that the foregoing has been served upon the parties by mailing a true and correct copy via U.S. mail, postage prepaid, on this the _20_ day of January, 2023, to the following:

Thomas W. Miller
Elliott C. Miller
MILLER, GRIFFIN & MARKS, P.S.C.
271 W. Short Street, Suite 600
Lexington, Kentucky 40507
twm@kentuckylaw.com
emiller@kentuckylaw.com
ATTORNEYS FOR PLAINTIFF

David A. Franklin
FRANKLIN & RAPP
1001 Monarch Street, Suite 120
Lexington, Kentucky 40513
dfranklin@franklinandrapp.com
ATTORNEY FOR DEFENDANT

CLERK, JESSAMINE CIRCUIT COURT

7

Tendered    22-CI-00395    01/16/2023    Doug Fain, Jessamine Circuit Clerk
Filed    23-CI-00122    03/08/2023    Doug Fain, Jessamine Circuit Clerk

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

ID : 000007 of 000007

EXH : 000052 of 000052

AOC-E-105        Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice        *Courts.ky.gov*

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **23-CI-00122**
Court: **CIRCUIT**
County: **JESSAMINE**

DOCUMENT

PM

NOT ORIGINAL
05/23/2023 03:18:29

82451-35

---

*Plantiff,* **WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET AL**, *Defendant*

TO:  **500 MEMORIAL DR KENTUCKY, LLC**

**5014 16TH AVENUE, SUITE 9**

**BROOKLYN, NY 11204**

Memo:  Registered Agent of Service exists.

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Jessamine Circuit Clerk
Date: **3/8/2023**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 _____

Served By _____

Title _____

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

CI : 000001 of 000001

Summons ID: @00000174132
CIRCUIT: 23-CI-00122 Long Arm Statute – Secretary of State
WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET AL



Page 1 of 1

eFiled



NOT ORIGINAL DOCUMENT
05/23/2023 03:19:21 PM
82451-35

AOC-E-105          Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice          *Courts.ky.gov*

CR 4.02; Cr Official Form 1

**CIVIL SUMMONS**

Case #: **23-CI-00122**
Court: **CIRCUIT**
County: **JESSAMINE**

---

*Plantiff,* **WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET AL**, *Defendant*

TO:  **FILE RIGHT CORPORATE SERVICES, LLC**

**1201 N. ORANGE STREET, SUITE 7140**

**WILMINGTON, DE 19801**

Memo: Related party is 500 MEMORIAL DR KENTUCKY, LLC

The Commonwealth of Kentucky to Defendant:
**500 MEMORIAL DR KENTUCKY, LLC**

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Jessamine Circuit Clerk
Date: **3/8/2023**

**Proof of Service**

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20 _____

_____
Served By

_____
Title

Summons ID: @00000174133
CIRCUIT: 23-CI-00122 Long Arm Statute – Secretary of State
WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET AL



Presiding Judge: HON. HUNTER DAUGHERTY (613171)

CI : 000001 of 000001

eFiled



AOC-E-105        Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice        *Courts.ky.gov*

CR 4.02; Cr Official Form 1

**CIVIL SUMMONS**

Case #: **23-CI-00122**
Court: **CIRCUIT**
County: **JESSAMINE**

DOCUMENT
PM
NOT ORIGINAL
05/23/2023 03:24:02
82451-35

*Plantiff,* **WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET AL**, *Defendant*

TO: **ZALMAN SKOBLO**

**5014 16TH AVENUE, SUITE 9**

**BROOKLYN, NY 11204**

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Jessamine Circuit Clerk
Date: **3/8/2023**

Presiding Judge: HON. HUNTER DAUGHERTY (613171)

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

CI : 000001 of 000001

Summons ID: @00000174134
CIRCUIT: 23-CI-00122 Long Arm Statute – SOS - Restricted Delivery
WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET AL







**Commonwealth of Kentucky**
**Doug Fain, Jessamine Circuit Clerk**

NOT ORIGINAL DOCUMENT

05/23/2023 03:24:46 PM

**Case #: 23-CI-00122**                          **Envelope #:  5697554**

**Received From: THOMAS MILLER**                 **Account Of: THOMAS MILLER**          82451-35

**Case Title: WORLEY, RODNEY ET AL VS. 500 MEMORIAL KENTUCKY, LLC ET AL**    **Confirmation Number: 158429607**

**Filed On 3/8/2023   1:29:47PM**

| #  | Item Description | Amount |
|----|------------------|--------|
| 1  | Court Facilities Fee | $25.00 |
| 2  | Access To Justice Fee | $20.00 |
| 3  | Money Collected For Others(Court Tech. Fee) | $20.00 |
| 4  | Money Collected For Others(Postage) | $23.10 |
| 5  | Money Collected For Others(Postage) | $46.20 |
| 6  | Money Collected For Others(Attorney Tax Fee) | $5.00 |
| 7  | Money Collected For Others(Secretary of State) | $16.65 |
| 8  | Money Collected For Others(Secretary of State) | $20.00 |
| 9  | Library Fee | $1.00 |
| 10 | Civil Filing Fee | $150.00 |
| 11 | Charges For Services(Attestation) | $0.50 |
| 12 | Charges For Services(Attestation) | $0.50 |
| 13 | Charges For Services(Copy - Photocopy) | $12.40 |
| 14 | Charges For Services(Copy - Photocopy) | $24.80 |
|    | **TOTAL:** | $365.15 |



**Commonwealth of Kentucky**
**Office of the Secretary of State**

Michael G. Adams
Secretary of State

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Jessamine County
107 North Main St.
Nicholasville, KY 40356

FROM:       SUMMONS DIVISION
            SECRETARY OF STATE

RE:         CASE NO: 23-CI-00122

DEFENDANT:  **ZALMAN SKOBLO**

DATE:       March 28, 2023



FILED
APR - 3 2023
DOUG FAIN, JESSAMINE CIRCUIT CLERK
BY: _____ D.C.

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

March 16, 2023

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

March 16, 2023





**Commonwealth of Kentucky**
**Office of the Secretary of State**

Michael G. Adams
Secretary of State

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Jessamine County
107 North Main St.
Nicholasville, KY 40356

FROM:        SUMMONS DIVISION
             SECRETARY OF STATE

RE:          CASE NO: 23-CI-00122

DEFENDANT:   **500 MEMORIAL DR KENTUCKY, LLC**

DATE:        March 28, 2023

FILED
APR - 3 2023
DOUG FAIN, JESSAMINE CIRCUIT CLERK
BY: _____ D.C.

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

March 16, 2023

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

March 16, 2023

.....mons.

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X ☐ Agent ☐ Addressee<br>B. Received by *(Printed Name)*   C. Date of Delivery |
| 1. Article Addressed to:   3/16/2023   23-CI-00122<br>**500 MEMORIAL DR KENTUCKY, LLC**<br>5014 16TH AVENUE<br>SUITE 9<br>BROOKLYN, NY 11204 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9402 7997 2305 6370 39 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500)     ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number *(Transfer from service label)*   307698<br>7022333000019488-3878 | |
| PS Form 3811, July 2020 PSN 7530-02-000-9053 | Domestic Return Receipt |

3/28/2023



Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718
Phone: (502) 564-3490
Fax: (502) 564-5687

Circuit Court Clerk
Jessamine County
107 North Main St.
Nicholasville, KY 40356

FROM:        SUMMONS DIVISION
             SECRETARY OF STATE

RE:          CASE NO: 23-CI-00122

DEFENDANT:   **500 MEMORIAL DR KENTUCKY, LLC**

DATE:        March 28, 2023

FILED
APR - 3 2023
DOUG FAIN, JESSAMINE CIRCUIT CLERK
D.C.
BY:

The Office of the Secretary of State was served with a summons and accompanying documents for the captioned defendant on

March 16, 2023

This office served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on

March 16, 2023



Filed                23-CI-00122    05/03/2023              Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:25:13
PM

82451-35

DEF : 000001 of 000003

ELECTRONICALLY FILED
COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 23-CI-122

RODNEY WORLEY and
500 MEMORIAL DRIVE, LLC, a Kentucky
Limited Liability Company                                      PLAINTIFFS

v.                     **MOTION FOR DEFAULT JUDGMENT**

500 MEMORIAL DR KENTUCKY, LLC, a
Delaware limited liability company and
ZALMAN SKOBLO                                                  DEFENDANTS

---

Come the Plaintiffs, Rodney Worley and 500 Memorial Drive, LLC, (collectively "Plaintiffs"), by counsel, and do hereby move this Court pursuant to CR 55.01 and all other applicable law for a Default Judgment against the Defendants, 500 Memorial Dr. Kentucky, LLC, and Zalman Skoblo (collectively "Defendants").  In support of their Motion, Plaintiffs state:

1.    The Complaint initiating this proceeding was filed on March 8, 2023.

2.    Both Defendants have been served by the Secretary of State on March 16, 2023, as set forth by the Kentucky Secretary of State in its response to the Clerk of this Court.

3.    More than twenty (20) days has elapsed since the Defendants were served with process. The Defendants have not entered an appearance in this matter, nor have they filed any responsive pleading in this matter.

4.    This Court has jurisdiction and venue over this matter and the Defendants pursuant to KRS 454.210(2).

5.    The Plaintiffs are therefore entitled to the entry of a default judgment against the Defendants.

1

NOT ORIGINAL

05/23/2023 03:25:13

82451-35

6.      As set forth in detail in the Complaint, which attaches (a) Affidavits executed by Mr. Skoblo as a member of 500 Memorial Dr. Kentucky, LLC, dated June 2, 2022, (b) the sworn testimony of Max Shor at a hearing before this Court on August 18, 2022 and (c) an Affidavit executed by Mr. Skoblo dated August 10, 2022, the Defendants defrauded the Plaintiffs, as a result of which the Defendants made a profit of $1,140,000.

7.      The undersigned certifies through his signature below that no papers have been served on him by either party in default.  The undersigned further certifies and avers that, to the best of his information and belief, the principals of the parties now in default are not now and have not been at any time during the pendency of this action a member of the armed forces of the United States.

8.      It is requested the Judgment be entered confirming the liability of the Defendants to the Plaintiffs and that this Court set a hearing to determine the Plaintiffs' damages.

## NOTICE

All parties hereby take notice that the foregoing Motion shall come on for hearing before the Jessamine Circuit Court on Thursday, May 11, 2023, at 9:00 a.m., or as soon thereafter as counsel may be heard.

MILLER, GRIFFIN & MARKS, P.S.C.
271 W. Short Street, Suite 600
Lexington, Kentucky 40507
Telephone:  (859) 255-6676
Facsimile:  (859)259-l562


By: *Thomas W. Miller*
        THOMAS W. MILLER
        twm@kentuckylaw.com
        ELLIOTT C. MILLER
        emiller@kentuckylaw.com

ATTORNEYS FOR PLAINTIFFS

Filed            23-CI-00122      05/03/2023          Doug Fain, Jessamine Circuit Clerk

DEF : 000002 of 000003

Filed                23-CI-00122    05/03/2023              Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT

05/23/2023 03:25:13 PM

82451-35

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served via U.S. First Class mail on this the 3rd  day of May, 2023, to the following:

500 MEMORIAL DR. KENTUCKY, LLC
5014 16th Avenue, Suite 9
Brooklyn, New York 11204

500 MEMORIAL DR. KENTUCKY, LLC
c/o File Right Corporate Services, LLC
1201 N. Orange Street, Suite 7140
Wilmington, Delaware  19801

ZALMAN SKOBLO
5014 16th Avenue, Suite 9
Brooklyn, New York 11204

Thomas W. Miller
*Counsel for Plaintiffs*

F:\Share\TWM\CASES\Worley - General\Worley-Memorial KY et al\Motion for Default Judgment.docxs

3

DEF : 000003 of 000003

Filed                23-CI-00122      05/10/2023                    Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:25:48
PM
82451-35

COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 23-CI-122
JUDGE HUNTER DAUHERTY

** *Electronically filed* **

RODNEY WORLEY
AND
500 MEMORIAL DRIVE, LLC                                                 PLAINTIFFS

Vs.                          LIMITED ENTRY OF APPEARANCE

500 MEMORIAL DRIVE KENTUCKY, LLC
AND
ZALMAN SKOBLO                                                          DEFENDANTS

Comes F. Larkin Fore and hereby enters his appearance for the Defendants, 500 Memorial Drive Kentucky, LLC and Zalman Skoblo, for the limited purpose of determining whether a meritorious defense exists and if so, to file the appropriate responsive pleadings within two weeks of the date hereof.  For purposes herein, the undersigned requests that service be made upon him for all pleadings in this matter at the address electronically shown below.

Respectfully submitted by:

FORE LAW PLLC

*/s/* F. LARKIN FORE
F. LARKIN FORE
FORE LAW PLLC
12701 Townepark Way, Suite 201
Phone:  502-708-1547
Fax:  502-708-1883
lfore@forelaw.com

Counsel for Defendants

EA : 000001 of 000002

NOT ORIGINAL

05/23/2023 03:25:48 PM

82451-35

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed electronically using the Jessamine Circuit Court eFiling system which will send notice to all counsel of this 10th day of May, 2023, upon the following counsel of record:

Thomas W. Miller
Elliott C. Miller
MILLER, GRIFFIN & MARKS, P.S.C.
271 W. Short Street, Suite 600
Lexington, KY 40507

Counsel for Plaintiff

/s/ F. LARKIN FORE
lfore@forelaw.com

Court   C   CIRCUIT COURTROOM                 JESSAMINE                    Run Date: 05/09/2023   9:01:36AM   DocketList.Rpt
Judge   HON. HUNTER DAUGHERTY                                              Prep In   J00000061773  05/09/2023   9:01:52AM   2
                                                                          05/11/2023 Court Docket
                                                                          Page 17 of 18

15        CI   23-CI-00122          WORLEY, RODNEY ET AL VS. 500 MEMORIAL DR KENTUCKY, LLC ET
                                    AL

☐

|||||||||||||||||||||||||||||||||

Pty Memo:   *Registered Agent of Service exists.*
☑ MILLER, THOMAS W                      ATTORNEY FOR PLAINTIFF
☐ 500 MEMORIAL DR KENTUCKY, LLC         DEFENDANT / RESPONDENT
☐ SKOBLO, ZALMAN                        DEFENDANT / RESPONDENT
☐ 500 MEMORIAL DRIVE, LLC               PLAINTIFF / PETITIONER
☐ WORLEY, RODNEY                        PLAINTIFF / PETITIONER
☐ FILE RIGHT CORPORATE SERVICES, LLC    REGISTERED AGENT OF SERVICE
  ☐ Bail Credit Denied    ☐ Danger to self or others    ☐ Flight Risk

**MOTION HOUR**
  MOTION FOR DEFAULT JUDGMENT                              ATTORNEY FOR PLAINTIFF

All defendants served through Sec. of State.

Pass to 5-25-23 9:00 -

ENTERED

MAY 12 2023

DOUG FAIN JESSAMINE CIRCUIT CLERK
BY:_____ D.C

05/11/2023    C    09:00 AM          Page 17 of 18        Judge Signature: _____

Filed          23-CI-00122    05/17/2023          Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:26:23
PM
82451-35

COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 23-CI-122
JUDGE HUNTER DAUHERTY

** *Electronically filed* **

RODNEY WORLEY
AND
500 MEMORIAL DRIVE, LLC                                    PLAINTIFFS

Vs.

500 MEMORIAL DRIVE KENTUCKY, LLC
AND
ZALMAN SKOBLO                                             DEFENDANTS

NOTICE MOTION ORDER

TO:    Thomas W. Miller
       Elliott C. Miller
       MILLER, GRIFFIN & MARKS, PSC
       271 W. Short Street, Suite 600
       Lexington, KY 40507

NOTICE

Take notice that the undersigned, on the 25th day of May, 2023 at the hour of 9:00 a.m. or as soon after that as it can be heard, in the courtroom of the above Court, will make the Motion and tender the Order set out below. Parties may access the hearing in person or via zoom video conference at https://us02web.zoom.us/j/8585136174?pwd=OWw0UE5hRTh5SSswSURRRmwvNVhaUT09, password: 600382 or via zoom: meeting ID: 8585136174, password: 600381 or via phone by calling 713-353-0212, conference code: 485015.

CERTIFICATE

It is hereby certified that a copy of this Notice-Motion-Order was on the 17th day of May, 2023, was electronically filed with the Jessamine Circuit Court and served on the parties listed above via electronic service via the court's eFiling system and to those who have not elected electronic service, via U.S. Mail, postage prepaid as shown in the certificate of notice by courtesy copy.

MOT : 000001 of 000002

Filed          23-CI-00122    05/17/2023          Doug Fain, Jessamine Circuit Clerk

Filed                23-CI-00122    05/17/2023                Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL DOCUMENT
05/23/2023 03:26:23 PM
82451-35

<u>MOTION</u>

The undersigned, filed a limited entry of appearance for the purposes of determining whether a meritorious defense existed and the decision as to the appropriate responsive pleadings in this matter.  The undersigned was unable to make the determination involved on the basis that satisfactory arrangements for representation were not made. As such and on a foregoing basis, the Court is asked to enter the order attached hereto.

Respectfully submitted by:

FORE LAW PLLC

<u>/s/ F. LARKIN FORE</u>
F. LARKIN FORE
FORE LAW PLLC
12701 Townepark Way, Suite 201
Phone:  502-708-1547
Fax:  502-708-1883
lfore@forelaw.com

Counsel for Defendants

Courtesy copy of this pleading has been sent via email to:


Glenn Spiegel
Becker and Poliakoff
45 Broadway, 17th Floor
New York, NY 10006
GSpiegel@beckerlawyers.com

Craig Lanza
1345 Avenue of the Americas, 33rd Floor
New York, NY 10105
lanza@lanzapllc.com

MOT : 000002 of 000002

Filed                23-CI-00122    05/17/2023                Doug Fain, Jessamine Circuit Clerk

Filed            23-CI-00122   05/17/2023              Doug Fain, Jessamine Circuit Clerk

NOT ORIGINAL
DOCUMENT
05/23/2023 03:27:03
PM

82451-35

ELECTRONICALLY FILED
COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 23-CI-122

RODNEY WORLEY and
500 MEMORIAL DRIVE, LLC, a Kentucky
Limited Liability Company                                                    PLAINTIFFS

v.

**RENOTICE OF MOTION FOR DEFAULT JUDGMENT**

500 MEMORIAL DR KENTUCKY, LLC, a
Delaware limited liability company and
ZALMAN SKOBLO                                                                 DEFENDANTS

---

Come the Plaintiffs, Rodney Worley and 500 Memorial Drive, LLC, (collectively "Plaintiffs"), by counsel, and do hereby renotice their Motion for Default Judgment for Thursday, May 25, 2023 at 9:00 a.m., or as soon thereafter as counsel may be heard.

Respectfully submitted,

MILLER, GRIFFIN & MARKS, P.S.C.

271 W. Short Street, Suite 600
Lexington, Kentucky 40507
Telephone: (859) 255-6676
Facsimile: (859)259-l562

By: *Thomas W. Miller*
       THOMAS W. MILLER
       twm@kentuckylaw.com
       ELLIOTT C. MILLER
       emiller@kentuckylaw.com

ATTORNEYS FOR PLAINTIFFS

1

Filed            23-CI-00122   05/17/2023              Doug Fain, Jessamine Circuit Clerk

RNH : 000001 of 000002

NOT ORIGINAL

05/23/2023 03:27:03

82451-35

## CERTIFICATE OF SERVICE

   I certify that a true and correct copy of the foregoing has been served via email on this the 17th day of May, 2023, to the following:

F. Larkin Fore
Fore Law, PLLC
12701 Townepark Way, Suite 201
lfore@forelaw.com

and by U.S. Mail to:

500 MEMORIAL DR. KENTUCKY, LLC
5014 16th Avenue, Suite 9
Brooklyn, New York 11204

500 MEMORIAL DR. KENTUCKY, LLC
c/o File Right Corporate Services, LLC
1201 N. Orange Street, Suite 7140
Wilmington, Delaware 19801

ZALMAN SKOBLO
5014 16th Avenue, Suite 9
Brooklyn, New York 11204

Thomas W. Miller
*Counsel for Plaintiffs*

F:\Share\TWM\CASES\Worley - General\Worley-Memorial KY et al\Renotice of Motion for Default Judgment.docxs

Filed        23-CI-00122        05/17/2023        Doug Fain, Jessamine Circuit Clerk

RNH : 000002 of 000002

NOT ORIGINAL

05/23/2023 03:27:35 PM

82451-35

COMMONWEALTH OF KENTUCKY
JESSAMINE CIRCUIT COURT
CIVIL ACTION NO. 23-CI-122
JUDGE HUNTER DAUHERTY

** *Electronically filed* **

RODNEY WORLEY
AND
500 MEMORIAL DRIVE, LLC                                          PLAINTIFFS

Vs.

500 MEMORIAL DRIVE KENTUCKY, LLC
AND
ZALMAN SKOBLO                                                   DEFENDANTS

ORDER

On motion of F. Larkin Fore, Fore Law PLLC, and the Court being sufficiently advised,

Now therefore it is ORDERED AND ADJUDGED that he is relieved as counsel of record for the

Defendants herein on the grounds as stated in the foregoing motion.

_____
JUDGE HUNTER DAUGHERTY

DATE: _____

Submitted by:

F. Larkin Fore
Fore Law PLLC

Copies to:
Thomas W. Miller
Elliott C. Miller

Glenn Spiegel
GSpiegel@beckerlawyers.com

Craig Lanza
lanza@lanzapllc.com